(No. 13484.—Reversed and remanded.)

WALKER D. HINES, Director General of Railroads, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (SARAH MAHON, Defendant in Error.)

*Opinion filed December 21, 1920.*

1. WORKMEN'S COMPENSATION—*Compensation act does not apply if employee is injured while in interstate commerce.* If a railroad employee is injured while engaged in interstate commerce the only remedy is under the Federal Employers' Liability act, and the Compensation act of the State does not apply.

2. SAME—*when employee is engaged in interstate commerce.* A railroad employee engaged in hauling stringers for the repair of a railroad bridge used for both interstate and intrastate commerce is engaged in interstate commerce.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

J. A. CONNELL, H. L. RICHOLSON, and CLAYTON L. POWELL, (BRUCE SCOTT, of counsel,) for plaintiff in error.

EDWIN M. ST. JOHN, and ROBERT E. LARKIN, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On August 24, 1918, Samuel Mahon was killed while in the employ of Walker D. Hines, Director General of Railroads, operating the Chicago, Burlington and Quincy railroad. His administratrix, Sarah Mahon, his widow, filed a claim for compensation. The arbitrator awarded compensation in the amount of $9.58 for a period of 415 weeks and $9.30 for one week. The Industrial Commission affirmed the award. The circuit court of LaSalle county affirmed the award of the commission after quashing the writ of *certiorari.* This court granted a writ of error.

The only question presented for decision is whether or not the deceased was engaged in interstate commerce at the

time he was killed in his employment with the plaintiff in error. Counsel for defendant in error make the argument that the evidence in the record tends to show that the deceased, at the time he was injured, was engaged in repairing a wagon bridge owned and maintained by plaintiff in error, and that that bridge was not used for interstate commerce but solely for intrastate commerce. They further argue that although the evidence, or some of it, may also tend to show that the deceased was engaged in repairing a railroad bridge for plaintiff in error which was used for both interstate and intrastate commerce, yet the evidence in the record is in such a condition that it is purely a question of fact as to which occupation he was engaged in, and that the finding of the commission, which is affirmed by the circuit court, should be sustained for that reason.

The record plainly and unequivocally shows the following facts: The Chicago, Burlington and Quincy Railroad Company owned and operated a structure across the river at Rockford generally referred to as one structure,—the bridge, or the railroad bridge of the Chicago, Burlington and Quincy Railroad Company. The structure, in fact, consists of two bridges built side by side on separate sets of piling. This structure was at first but a single bridge, used for a number of years by the railroad company as a railroad bridge, only. Later a wagon bridge was built and maintained by the railroad company beside and adjoining the railroad bridge. The latter was used for wagons and other vehicles drawn by horses to cross the river back and forth, and its sole use was for intrastate commerce and travel. The floors of the two bridges came very close together,—perhaps touched each other,—and there was only about a half inch or an inch difference in the height of the floors of the two structures. The floor of the railroad bridge was laid parallel to the railroad track, while the floor of the wagon bridge was laid crosswise or at right angles to the line of travel. No railing separated the two

structures, and wagons driven across the wagon bridge could be, and sometimes were, driven on or across the railroad bridge, and particularly at the end of the bridge when driving on or off of it. There was a three-foot bannister on the outside of each bridge, and the two structures, when viewed from the top, presented the appearance of, and perhaps many regarded them as, one structure. Still they were different structures, and when viewed from beneath clearly showed themselves to be separate structures. The railroad bridge was sixteen feet wide and required sixteen-foot stringers. The other bridge only required twelve-foot stringers. The evidence in the record is that the deceased and the party with him were hauling sixteen-foot stringers and that they were for the repair of the railroad bridge. The witness Harry Archer, testifying for defendant in error, so stated, and he further testified that they were working on the railroad bridge and that they did not do any work on the wagon bridge that day, and that he was in the motor with the deceased when he was killed. There is no witness in the case that contradicts this testimony. The only evidence favorable to defendant in error's contention is that most all the witnesses in relating what they were doing in the work on the bridge that day or in relating or speaking of what the workmen were doing referred to the whole structure and used the term bridge, meaning thereby the railroad bridge, as clearly shown by the record.

There can be but one finding in the record that will be supported by the evidence, and that is the finding that the deceased was engaged in repairing the railroad bridge for plaintiff in error when he was killed, and he was engaged in interstate commerce because the bridge he was repairing was used by the railroad company for both interstate and intrastate commerce. Employees engaged in the operation, maintenance or repair of any of the instrumentalities used by a carrier in the transportation of goods from one State into another are engaged in interstate commerce. (*Dickin-*

*son* v. *Industrial Board,* 280 Ill. 342; *Illinois Central Railroad Co.* v. *Behrens,* 233 U. S. 473; *Pederson* v. *Delaware, Lackawanna and Western Railroad Co.* 229 id. 146.) Where an injury occurs to an employee while engaged in interstate commerce there is no choice of remedy. The remedy under the Federal Employers' Liability act is exclusive and all State laws covering the same character of facts are superseded. (*Michigan Central Railroad Co.* v. *Vreeland,* 227 U. S. 59.) The Industrial Board had no jurisdiction to act in this case.

The judgment of the circuit court is reversed and the cause remanded, with directions to quash the record of the Industrial Commission.

*Reversed and remanded, with directions.*