JOSEPH M. SUTHERLAND, Plaintiff-Appellant, v. NORFOLK SOUTHERN RAILWAY COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—04—1631

Opinion filed March 28, 2005.

John S. Bishof, Jr., of Law Office of John Bishof, of Chicago, for appellant.

Raymond H. Groble III, of Daley & Mohan, P.C., and James S. Whitehead, of Sidley, Austin, Brown & Wood, L.L.P., both of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Joseph M. Sutherland filed a three-count complaint against his former employer, Norfolk Southern Railway Company (Norfolk Southern). Counts I and II sought relief under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2000)) and the Federal Boiler Inspection Act (FBIA) (49 U.S.C. § 20701 (2000)), respectively, for personal injuries Sutherland sustained while employed by Norfolk Southern. Count III was a common-law claim for retaliatory discharge. The circuit court granted Norfolk Southern's motion to dismiss count III. For the reasons that follow, we affirm.

## BACKGROUND

The factual allegations common to all three counts are summarized as follows. Sutherland was employed by Norfolk Southern as a conductor/yard foreman at Norfolk Southern's Calumet Yard. On April 21, 2000, Sutherland and his crew were engaged in moving groups of railcars to different tracks in the Calumet Yard. During one of the movements, Sutherland entered a cab of the locomotive in use by his crew and sat in a chair. The chair's back support broke, and he fell to the cab floor, sustaining injuries.

On July 3, 2000, Sutherland was terminated from his employment. On March 5, 2003, Sutherland filed his complaint, alleging, as noted, personal injury in counts I and II and retaliatory discharge in count III. Sutherland claimed that Norfolk Southern discharged him in order to prevent him from presenting damages for wage loss in his FELA/FBIA action,[1] to avoid reporting his on-the-job injury to the Federal Railroad Administration (FRA) and to avoid reporting Norfolk

---

[1]Apparently, Sutherland meant by this allegation that Norfolk Southern fired him either in anticipation or as a result of his filing a claim under the

Southern's violation of the FBIA to the Secretary of Transportation. Norfolk Southern moved to dismiss count III pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2002)) on the grounds that Sutherland's right of action is not protected under the Illinois retaliatory discharge law. The circuit court agreed with Norfolk Southern and dismissed count III. Upon receiving Rule 304(a) (155 Ill. 2d R. 304(a)) certification, Sutherland filed this appeal.

## ANALYSIS

The central issue on this appeal is whether a railroad employee has the protection of the Illinois retaliatory discharge law, where his discharge was brought about in anticipation or as a result of his filing a claim under the FELA and/or the FBIA. Sutherland contends that the Illinois retaliatory discharge law affords him that protection. Norfolk Southern, on the other hand, argues that Sutherland's claim of retaliatory discharge falls outside the scope of the tort.

A section 2—615 motion to dismiss attacks the legal sufficiency of the complaint by alleging defects appearing on its face. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484, 639 N.E.2d 1282, 1289 (1994). Such a motion should be granted if the complaint does not allege sufficient facts to state a cause of action. *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 918, 770 N.E.2d 684, 692-93 (2002). Our review on appeal is generally *de novo*. *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 68, 803 N.E.2d 988, 991 (2004).

The parties agree that, as a railroad employee, Sutherland was covered by the FELA, which provides the sole remedy for workplace injuries to the exclusion of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2002)). See, *e.g.*, *Hines v. Industrial Comm'n*, 295 Ill. 231, 234, 129 N.E. 175, 176 (1920) ("Where an injury occurs to an employee while engaged in interstate commerce there is no choice of remedy. The remedy under the Federal Employers' Liability Act is exclusive and all State laws covering the same character of facts are superseded"); *Starks v. Northeast Illinois Regional Commuter R.R. Corp.*, 245 F. Supp. 2d 896, 899 (N.D. Ill. 2003) (the FELA offers

---

FELA and/or the FBIA. With respect to this allegation (his discharge for filing the FELA/FBIA claim), Sutherland appears to have abandoned any claims involving the FBIA and focuses exclusively on the consequences of being discharged for availing himself of the remedies afforded by the FELA. We, therefore, limit our analysis to his FELA-related claim, although we think that the same reasoning would apply to his FBIA-related claim, had that argument been made and preserved.

exclusive remedy for railroad employees seeking to recover for personal injury incurred in course of employment). The Workers' Compensation Act itself provides that "[e]mployees are not included within the provisions of this Act when excluded by the laws of the United States relating to liability of employers to their employees for personal injuries where such laws are held to be exclusive." 820 ILCS 305/ 1(b)(3) (West 2002).

■ It has long been held that the FELA provisions do not in themselves prohibit the discharge of an employee for invoking their protections and benefits.[2] See *Shrader v. CSX Transportation Inc.*, 70 F.3d 255, 257-58 (2d Cir. 1995) (an employee discharged for filing his or her own FELA claim does not have a cause of action under the FELA for retaliatory discharge); accord *Mayon v. Southern Pacific Transportation Co.*, 805 F.2d 1250, 1252-53 (5th Cir. 1986) ("one who helps a co-worker file an FELA claim may have a cause of action under [the FELA] for retaliatory discharge. One who is discharged for filing his own FELA claim, however, does not"); *Landfried v. Terminal R.R. Ass'n of St. Louis*, 721 F.2d 254, 256 (8th Cir. 1983); *Lewy v. Southern Pacific Transportation Co.*, 799 F.2d 1281, 1289 (9th Cir. 1986). As one court explained:

"Courts have not treated injuries resulting from allegedly wrongful discharges and other labor law violations as 'on the job' injuries in [the FELA] context, and therefore, with the single exception [of *Sharkey v. Penn Central Transportation Co.*, 493 F.2d 685 (2d Cir. 1974)], they have not authorized the award of damages under [the] FELA *** for such injuries." *Lewy*, 799 F.2d at 1289.

Rather, discharged employees have recourse under the grievance and arbitration procedures of the Railway Labor Act (RLA) (45 U.S.C. § 151 *et seq.* (2000)). *Shrader*, 70 F.3d at 258; *Mayon*, 805 F.2d at 1252-53; *Landfried*, 721 F.2d at 256; *Lewy*, 799 F.2d at 1289. Both reinstatement and back pay are available under the RLA. See *Maas v. Frontier Airlines, Inc.*, 676 F. Supp. 224, 227 (D. Colo. 1987).

■ Until the Supreme Court's decision in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 129 L. Ed. 2d 203, 114 S. Ct. 2239 (1994), it had been held that the RLA remedies were exclusive and foreclosed an

---

[2]In contrast to the express provision of the Workers' Compensation Act, that "[i]t shall be unlawful for any employer *** to discharge or to threaten to discharge, or to refuse to rehire or recall *** an employee because of the exercise of his or her rights or remedies granted to him or her by this Act" (820 ILCS 305/4(h) (West 2002)), although the Workers' Compensation Act does not purport to create a private right of action in the event this provision was violated (see *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 34-35, 645 N.E.2d 877, 879-80 (1994)).

action in federal and state courts. See *Lewy*, 799 F.2d at 1289 (in enacting the RLA, "Congress specifically intended *** to keep railroad labor disputes *out of the courts* and instead requires the use of grievance procedures and arbitration" (emphasis in original)).[3] *Hawaiian Airlines*, however, carved out an exception to that rule, holding that a state-law claim of retaliatory discharge is not preempted by federal law if it involves rights and obligations that exist independent of the collective-bargaining agreement. *Hawaiian Airlines*, 512 U.S. at 260, 129 L. Ed. 2d at 216, 114 S. Ct. at 2247. In other words, a state-law claim of retaliatory discharge is not preempted by the RLA where it involves "only the purely factual inquiry into any retaliatory motive of the employer." *Hawaiian Airlines*, 512 U.S. at 266, 129 L. Ed. 2d at 220, 114 S. Ct. at 2251. Sutherland's claim of retaliatory discharge is, therefore, excluded from federal preemption under *Hawaiian Airlines* since Norfolk Southern does not contend that Sutherland's claim implicates a collective-bargaining agreement so as to allow Norfolk Southern to avoid the retaliatory discharge analysis under Illinois law.

We therefore proceed to the main issue in the instant case— whether Illinois law recognizes Sutherland's cause of action for retaliatory discharge, where the discharge occurred either in anticipation or as a result of his filing a claim under the FELA and where the provisions of the collective-bargaining agreement are not implicated. For the reasons that follow, we hold that it does not. The tort of retaliatory discharge has unusual origins. In *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978), the supreme court first recognized a common-law remedy for retaliatory discharge as implied from the provisions of and the public policy underlying the Workers' Compensation Act. *Kelsay*, 74 Ill. 2d at 181-82, 384 N.E.2d at 357. Subsequent decisions of the supreme court progressively defined the scope of the new tort. In *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981), the supreme court extended the tort of retaliatory discharge beyond its workers' compensation origins to provide a remedy to an employee fired for reporting criminal activity of a coworker.[4] In *Midgett v. Sackett-Chicago, Inc.*, 105 Ill. 2d 143, 473

---

[3]Moreover:
> "A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. [Citation.] He is limited to the judicial review of the Board's proceedings that the Act itself provides." *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 325, 32 L. Ed. 2d 95, 100, 92 S. Ct. 1562, 1565 (1972).

[4]The "whistle-blower" cause of action has since been codified in the Whistleblower Act (740 ILCS 174/15 (West Supp. 2003)).

N.E.2d 1280 (1984), the supreme court held that the action for retaliatory discharge was available to unionized employees, independently of the collective-bargaining agreement. However, in *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 478 N.E.2d 1354 (1985), *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 519 N.E.2d 909 (1988), and *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 601 N.E.2d 720 (1992), the supreme court expressed disinclination to further expand the tort of retaliatory discharge.[5] Similarly, in *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 645 N.E.2d 877 (1994), after tracing the "guarded development" and "narrow construction" of the tort of retaliatory discharge, the supreme court declined to extrapolate from the rationale of *Kelsay* a cause of action predicated upon retaliatory demotion. Most recently, in *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 722 N.E.2d 1115 (1999), and *Metzger v. DaRosa*, 209 Ill. 2d 30, 44, 805 N.E.2d 1165 (2004), the supreme court emphasized that it "has consistently sought to restrict the common law tort of retaliatory discharge."

In *Fisher*, the supreme court addressed whether there was a private right of action implied from section 3—608 of the Nursing Home Care Act (210 ILCS 45/3—608 (West 1996)), which prohibited retaliation against, among others, nursing home employees who reported abuse and neglect of nursing home residents. *Fisher*, 188 Ill. 2d at 459-60, 722 N.E.2d at 1117. Although noting that nursing home employees were required by law to report abuse and neglect of nursing home residents to the Illinois Department of Public Health, the supreme court declined to imply a private right of action for nursing home employees discharged or otherwise retaliated against for reporting such abuse and neglect.[6] *Fisher*, 188 Ill. 2d at 460-61, 722 N.E.2d at 1118. Similarly, in *Metzger*, the supreme court's subsequent decision on the subject, the court declined to imply a private right of action from section 19c.1 of the Personnel Code (20 ILCS 415/19c.1 (West 2002)), which prohibited retaliation against state employees for reporting violations of " 'any law, rule, or regulation' " or " 'mismanagement, a gross waste of funds, an abuse of authority, or a substantial

---

[5]In *Barr*, the supreme court declined to expand the tort to encompass discharge for the exercise of the right to free speech. In *Hinthorn* and *Hartlein*, the supreme court declined to expand the tort of retaliatory discharge to encompass constructive discharge.

[6]Although *Fisher* could also be characterized as a whistle-blower action, the plaintiffs opted not to argue their case under the *Palmateer* standard. The sole count of the complaint in *Fisher* purported to allege an implied private right of action for damages pursuant to section 3—608. *Fisher*, 188 Ill. 2d at 458.

and specific danger to public health or safety.' "[7] *Metzger*, 209 Ill. 2d at 35, 805 N.E.2d at 1167, quoting 20 ILCS 415/19c.1 (West 2002).

■ As the law presently stands, actions for retaliatory discharge have been sustained in only two situations: (1) where the discharge stems from exercising rights pursuant to the Workers' Compensation Act or (2) where the discharge is for "whistle-blowing" activities, namely, the reporting of illegal or improper conduct:

> "Illinois courts have applied the tort of retaliatory discharge in only two situations: (1) where the discharge stems from asserting a worker's compensation claim (*Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978)) and (2) where the discharge is for certain activities referred to as 'whistle-blowing' (*Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981) (*Palmateer*)). *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 706 N.E.2d 491 (1998). Other than these two circumstances, however, Illinois courts consistently have refused to expand the tort to encompass a private and individual grievance. See *Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 485 N.E.2d 359 (1985); *McGrath v. CCC Information Services, Inc.*, 314 Ill. App. 3d 431, 731 N.E.2d 384 (2000) (*McGrath*); *Eisenbach v. Esformes*, 221 Ill. App. 3d 440, 582 N.E.2d 196 (1991); *Abrams v. Echlin Corp.*, 174 Ill. App. 3d 434, 528 N.E.2d 429 (1988) (*Abrams*)." *Geary v. Telular Corp.*, 341 Ill. App. 3d 694, 701, 793 N.E.2d 128, 134 (2003).

Sutherland contends that he is a whistle-blower within the meaning of *Palmateer* because he "alleged that [Norfolk Southern] fired him in retaliation for filing a claim for injuries he sustained at work, for reporting a defective locomotive and for reporting his injury, and that the discharge violated a clear mandate of public policy." We note that in count III of his complaint, Sutherland alleged that he was discharged for "falsif[ying] a personal injury and *** ME—60 forms in accordance [*sic*] with his *** injury"; to "prevent [him] from presenting damages of wage loss *** in his FELA action *** and FBIA action"; "in order [for Norfolk Southern] to avoid reporting [his] on the job injury *** to the Federal Railroad Administration" and the Secretary of Transportation; and "in order to avoid reporting [Norfolk Southern's] violation of the FBIA to the Secretary of Transportation." Norfolk Southern argues that to be considered a whistle-blower, it is essential that during the course of his employment, the employee had actively complained of some aspect of his employer's or coworker's

---

[7]*Metzger*, unlike *Fisher*, involved a retaliatory action short of discharge and, therefore, under *Zimmerman*, did not fall within the scope of the tort of retaliatory discharge unless the supreme court chose to expand the narrow confines of the tort.

conduct, with such complaints having been made either to an outside law enforcement or regulatory authority or to internal company management. We agree and further note that the reporting of certain dangerous or unsafe conditions is also within the scope of whistle-blower protections. See *Stebbings v. University of Chicago*, 312 Ill. App. 3d 360, 726 N.E.2d 1136 (2000). However, as Norfolk Southern points out, Sutherland's complaint contains no allegations that he was dismissed for blowing the whistle on Norfolk Southern's misconduct. As noted, Sutherland alleged that he was fired to prevent him from presenting damages in his FELA/FBIA action and so that Norfolk Southern would avoid compliance with *its* reporting requirements. Nowhere in his complaint did Sutherland allege that he was discharged in retaliation for *reporting* any alleged wrongdoing or a dangerous or unsafe condition. Granted, Norfolk Southern does not dispute that plaintiff reported to his supervisor his injury and what caused it. However, this is not whisle-blowing under Illinois law.

■ A whistle-blower must allege that his or her discharge violated a clear mandate of public policy because the reported wrongful conduct or unsafe condition affected the health, safety or welfare of Illinois residents as a whole. See *Palmateer*, 85 Ill. 2d at 130, 421 N.E.2d at 878 (what is complained of must "affect[ ] the citizens of the State collectively"); *Stebbings*, 312 Ill. App. 3d at 365, 726 N.E.2d at 1140. Consequently, courts repeatedly have held that a railroad employee cannot qualify as a whistle-blower under Illinois law simply because he or she reported his or her own injury and the condition that caused it. See *Emery v. Northeast Illinois Regional Commuter R.R. Corp.*, No. 02 C 9303 at 24 (N.D. Ill. 2003) (the plaintiff's report of an injury resulting from her tripping over an electrical socket does not implicate the general public welfare so as to qualify her as a whistle-blower); *Sabich v. National R.R. Passenger Corp.*, 763 F. Supp. 989, 994 (N.D. Ill. 1991) ("[a]ssuming that Amtrak discharged Sabich because he submitted an injury report, there are no policy concerns that are implicated by the discharge"); see also *Brown v. Grand Trunk Western R.R.*, No. 1:01—cv—666, slip op. at 8 (W.D. Mich., January 22, 2003) (reporting one's own injury and the condition that caused it does not rise to the level of whistle-blowing under state law). Accordingly, because Sutherland's report to Norfolk Southern that he was injured as a result of a broken locomotive cab chair can hardly be said to "affect[ ] the citizens of the State collectively," he is not a whistle-blower under Illinois law.[8]

■ We will, therefore, next address whether Illinois law of retalia-

---

[8]Rather, in this respect, Sutherland may have the protection under the

tory discharge offers Sutherland redress for being discharged for filing an FELA claim. Sutherland contends that the supreme court decided this issue in his favor in *Koehler v. Illinois Central Gulf R.R. Co.*, 109 Ill. 2d 473, 488 N.E.2d 542 (1985). In *Koehler*, the plaintiff alleged that he was discharged by the defendant railroad in retaliation for filing an FELA claim. *Koehler*, 109 Ill. 2d at 474, 476, 488 N.E.2d at 543, 544. The appellate court entered a judgment dismissing the complaint on the ground that the tort of retaliatory discharge was not available to an employee covered by a collective-bargaining agreement. *Koehler v. Illinois Central Gulf R.R. Co.*, 123 Ill. App. 3d 1038, 463 N.E.2d 918 (1984). On further appeal, the supreme court initially entered a supervisory order, reversing the judgment of dismissal and remanding the cause to the circuit court to proceed in conformity with *Midgett*, decided in the interim, which, as noted, extended the action for retaliatory discharge to unionized employees. *Koehler*, 109 Ill. 2d at 475, 488 N.E.2d at 543. However, upon a motion for reconsideration, the supreme court affirmed the dismissal on the sole ground that the plaintiff's action for retaliatory discharge was preempted by the RLA. *Koehler*, 109 Ill. 2d at 480, 488 N.E.2d at 546. Sutherland contends that, but for preemption, *Koehler* would have allowed a nearly identical retaliatory discharge action to proceed. Now that *Hawaiian Airlines* removed the preemption obstacle to state retaliatory discharge actions not implicating collective-bargaining agreements, Sutherland argues that the rationale of the initial supervisory order of the supreme court in *Koehler* is now revived and implicitly endorses the viability of a private right of action implied from the policies embodied in the FELA, the federal analog to the Workers' Compensation Act.

This argument is without merit. Aside from the fact that the initial supervisory order in *Koehler* was superceded by a published opinion and, therefore, has no precedential force, our supreme court's subsequent decisions foreclosed the viability of such an action. As noted, after *Kelsay* and *Palmateer*, the supreme court has viewed new implied actions for retaliatory discharge exceedingly less favorably. See *Fisher*, 188 Ill. 2d at 468, 722 N.E.2d at 1121 ("we must *** hesitate to imply [retaliatory discharge] actions under a statute without explicit

---

Federal Railroad Safety Authorization Act of 1994 (FRSAA) (49 U.S.C. § 20101 *et seq.* (2000)), which grants a broad federal remedy to railroad "whistleblowers" (see *Rayner v. Smirl*, 873 F.2d 60, 64 (4th Cir. 1989)). It has been held that the plaintiff's report of unsafe conditions and/or an injury may be considered to constitute an action relating to the enforcement of railroad safety, causing the FRSAA protections found in 49 U.S.C. § 20109(a) (2000) to apply. *Brown*, slip op. at 14. The remedy, again, lies under the RLA. 49 U.S.C. § 20109(c) (2000); *Rayner*, 873 F.2d at 64; *Brown*, slip op. at 9, 14.

legislative authority"). As discussed in *Geary*, this court, too, has declined to expand a private right of action to cover retaliatory discharges which did not occur in the Workers' Compensation Act or whistle-blowing settings. See *Geary*, 341 Ill. App. 3d at 701-02, 793 N.E.2d at 134; see also *Mitchell v. Deal*, 241 Ill. App. 3d 331, 609 N.E.2d 378 (1993) (rejecting a claim for retaliatory discharge by a farm laborer not covered by the Workers' Compensation Act); *Eisenbach*, 221 Ill. App. 3d 440, 582 N.E.2d 196 (rejecting a claim for retaliatory discharge by a plaintiff who was fired for bringing a lawsuit against an affiliate of his employer).

Based upon the clearly expressed disinclination of our supreme court to expand the scope of protection offered by Illinois law of retaliatory discharge, we hesitate to imply a private right of action from the public policies embodied in the FELA. In narrowing the scope of protection afforded by the law of retaliatory discharge, the supreme court has delineated four factors to be considered in determining if a private right of action may be implied from a statute:

    " 'Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.' " *Metzger*, 209 Ill. 2d at 36, 805 N.E.2d at 1168, quoting *Fisher*, 188 Ill. 2d at 460, 722 N.E.2d at 1117-18.

Looking to these four factors, we find that although the FELA was enacted to benefit employees such as Sutherland, as discussed, the provisions of the FELA, unlike those in the Workers' Compensation Act, do not purport to protect against retaliatory discharge (see *Lewy*, 799 F.2d at 1289) and, therefore, a private right of action would not be consistent with the underlying purposes of the FELA. Moreover, Sutherland was not without a remedy for the alleged retaliatory discharge. As discussed, the remedy for retaliatory discharge for filing an FELA claim lies under the RLA's grievance and arbitration procedures. See *Shrader*, 70 F.3d at 258. Sutherland thus need not resort to the Illinois tort of retaliatory discharge to vindicate his rights. Accordingly, there is no compelling rationale to afford protection under Illinois retaliatory discharge law to cover employees discharged for filing FELA claims, in the face of clearly articulated policy of our supreme court to narrow rather than expand the range of such protections.

Lastly, Sutherland's claim can be construed as being, in part, premised upon the theory that Norfolk Southern dismissed him in order to avoid complying with the reporting requirements under the

applicable FRA and FBIA regulations.[9] However, Sutherland fails to cite any authority for the proposition that there is a private right to damages under Illinois law in the event a railroad attempts to evade the reporting requirements. Rather, the applicable federal regulations provide that a railroad violating the reporting requirements is subject to a civil penalty in the range of $500 to $10,000 per violation (49 U.S.C. §§ 21302(a)(1), (a)(2) (2000)), which the FRA on behalf of the Secretary of Transportation has the exclusive authority to impose (49 U.S.C. § 20111(a)(1) (2000)) and which the Attorney General has the exclusive authority to collect (49 U.S.C. § 20112(a)(2) (2000)).

For the reasons set forth above, we affirm the judgment of the circuit court.

Affirmed.

McBRIDE and O'MALLEY, JJ., concur.

---

[9]49 C.F.R. § 225 (2003) and 49 U.S.C. § 20703 (2000), respectively.