# Illinois Official Reports

## Appellate Court

---

**Sweeney v. City of Decatur, 2017 IL App (4th) 160492**

---

| | |
|---|---|
| Appellate Court Caption | BRADLEY L. SWEENEY, Plaintiff-Appellant, v. THE CITY OF DECATUR, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-16-0492 |
| Filed | March 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 16-L-18; the Hon. Albert G. Webber, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jon D. Robinson (argued), of Bolen Robinson & Ellis, LLP, of Decatur, for appellant.<br><br>Jerrold H. Stocks (argued) and Edward F. Flynn, of Featherstun, Gaumer, Postlewait, Stocks, Flynn, Hubbard, of Decatur, for appellee. |
| Panel | PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Harris and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1       In February 2016, plaintiff, Bradley L. Sweeney, filed a two-count complaint against defendant, the city of Decatur (City), his former employer, and Tim Gleason, the City's manager. In April 2016, plaintiff filed an amended complaint against only the City. In response, the City filed a combined motion to dismiss the amended complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)). After a June 2016 hearing, the Macon County circuit court granted the City's motion and dismissed with prejudice plaintiff's amended complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)).

¶ 2       Plaintiff appeals, contending the circuit court erred by dismissing his claim (1) brought under section 15(b) of the Whistleblower Act (740 ILCS 174/15(b) (West 2014)) because that provision (a) only requires disclosure of suspected law violations to a government or law enforcement agency and (b) does not require the employee to also refuse to participate in the activity and (2) of common-law retaliatory discharge based on the public policy protecting (a) whistleblowing and (b) the freedom of speech under the first amendment (U.S. Const., amend. I). We affirm.

¶ 3                                            I. BACKGROUND

¶ 4       In the February 2016 complaint, plaintiff asserted a claim of common-law retaliatory discharge and a violation of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2014)) against the City and Gleason. The City and Gleason filed a section 2-619.1 motion to dismiss. After an April 2016 hearing, the circuit court granted the motion to dismiss under section 2-615 and allowed plaintiff to replead.

¶ 5       Plaintiff's April 2016 amended complaint again asserted retaliatory discharge and Whistleblower Act claims but only against the City. The amended complaint alleged that, in January 2015, Ryan McCrady, then the City's manager, appointed plaintiff as the City's police chief. As the police chief, plaintiff reported directly to the city manager. In March 2015, Gleason became the City's manager. In May 2015, Gleason told plaintiff to provide a police car and uniformed officer to drive him to the St. Louis airport to catch a plane for a vacation after the City's State of the City address. Plaintiff reported to Gleason his personal use of public resources was improper. Gleason then ordered plaintiff to have the car waiting at the City's civic center to transport him to St. Louis. Plaintiff discussed the situation with the deputy chief of police, Jim Getz, who agreed Gleason's personal use of the officer and police car was improper but volunteered to drive Gleason. While on duty, Getz drove Gleason to the St. Louis airport in his police vehicle. Plaintiff "involuntarily allowed," but did not order, Gleason's personal use of police resources. After Gleason returned from vacation, plaintiff again told Gleason his use of a police car and driver for his personal use was improper. While Gleason stated he understood plaintiff's objection to his use of the officer and car, their relationship was difficult after the conversation. Plaintiff alleged Gleason's actions violated (1) the official misconduct statute (720 ILCS 5/33-3 (West 2014)); (2) the City's police department's general order No. 11-03, which prohibits the use of departmental vehicles outside the City's limits for personal business; (3) chapter eight of the City's code, which prohibits a City officer or employee from the solicitation or acceptance of gifts prohibited by the State Officials and Employees Ethics Act (Ethics Act) (5 ILCS 430/1-1 *et seq.* (West

2014)); (4) the Ethics Act; and (5) article VIII, section 1(a), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VIII, § 1(a)), which provides "[p]ublic funds, property or credit shall be used only for public purposes." Plaintiff contends Gleason knew or should have known his personal use of the police car and officer was improper because he was then a member of the Illinois Law Enforcement Training and Standards Board and a former police lieutenant.

¶ 6　　　The complaint further alleged that, in January 2016, Gleason asked plaintiff to make a public statement supporting Gleason's request for a new local motor fuel tax at the City council meeting. Plaintiff refused to make the requested public statement. Gleason responded with hostility and told plaintiff to leave his office. The complaint alleged matters of tax policy were outside the scope of plaintiff's job duties as police chief.

¶ 7　　　On February 2, 2016, Gleason and the City department heads, including plaintiff, met at the City's civic center. During the meeting, Gleason requested input from those present. When it came to his turn, plaintiff responded the City had other potential revenue sources and stated his opposition to a further tax increase. Gleason became furious and ordered plaintiff to leave the meeting. Later that day and the next day, Gleason asked plaintiff the following questions: " 'Do you know who you work for?' and 'Do you want to keep your job as Police Chief?' " On February 4, 2016, Gleason asked plaintiff to resign. When plaintiff refused to resign, he received a written notice of termination.

¶ 8　　　As to his retaliatory discharge claim, plaintiff alleges his termination was in retaliation for his (1) "disclosure regarding Gleason's personal use of a Decatur police car and uniformed officer"; (2) "refusal to make a public statement at the City Council meeting supporting Gleason's proposed motor fuel tax"; and (3) "February 2, 2016 statement in opposition to increasing taxes when he believed other sources of income were available to the City." He alleges his retaliatory termination violated on or more of the following clear mandates of public policy:

> "(1) enforcing the State's criminal code and ethics regulations, (2) the policy of furthering investigation of a crime within a police department, (3) preventing the private use of public resources, in violation of Article VIII(1)(a) of the Illinois Constitution, (4) protecting the First Amendment rights of public employees to speak on matters of public concern outside the scope of their job duties, and (5) protecting the First Amendment right of a [*sic*] public employees to not be coerced by their government employers into engaging in political speech."

¶ 9　　　Regarding his claim under the Whistleblower Act, plaintiff asserted he disclosed certain information to Gleason, who was his sole supervisor and authorized by the City to receive such information on behalf of the City. He had a reasonable belief the information disclosed to Gleason concerned violations of the Illinois Constitution, as well as state laws, rules, and ethics regulations. Moreover, plaintiff contends Gleason, acting for and on behalf of the City in his capacity as city manager, retaliated against him by terminating his employment due to plaintiff's disclosure of information to Gleason, which plaintiff reasonably believed disclosed a violation of state law.

¶ 10　　　In May 2016, the City filed a combined motion to dismiss the amended complaint under section 2-619.1 of the Code. The section 2-615 part of the motion asserted plaintiff's retaliatory discharge claim should be dismissed for failure to state a clear mandate of public policy undermined by the discharge of an at-will employee. The City also argued both claims should be dismissed because they failed to allege whistleblowing activity. Moreover, the

section 2-615 motion to dismiss contended the allegations regarding the first amendment failed to state a cause of action and the element of causation was defeated. The section 2-619 portion of the motion asserted (1) the allegations in the amended complaint and Gleason's affidavit establish a cause, other than a retaliatory one, for plaintiff's termination; and (2) causation fails because plaintiff's termination was remote from the date of the alleged whistleblowing.

¶ 11    On May 26, 2016, the circuit court held a hearing on the City's motion to dismiss. After hearing the parties' arguments, the court took the matter under advisement. On June 7, 2016, the court entered a lengthy docket entry, dismissing with prejudice plaintiff's amended complaint under section 2-615 of the Code. On June 30, 2016, plaintiff filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015). Accordingly, we have jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 12                                   II. ANALYSIS

¶ 13    In this case, the circuit court dismissed with prejudice plaintiff's complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)). A section 2-615 motion to dismiss challenges the complaint's legal sufficiency based on defects apparent on its face. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 19. In ruling on such a motion, "a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Blumenthal*, 2016 IL 118781, ¶ 19. The court must determine "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Blumenthal*, 2016 IL 118781, ¶ 19. This court reviews *de novo* the grant of a section 2-615 motion to dismiss. *Blumenthal*, 2016 IL 118781, ¶ 19. We also review *de novo* an issue of statutory construction. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 17.

¶ 14                            A. Whistleblower Act Claim

¶ 15    Section 15(b) of the Whistleblower Act (740 ILCS 174/15(b) (West 2014)) provides the following: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." Thus, to establish a cause of action under section 15(b), the employee must show (1) an adverse employment action by his or her employer, (2) which was in retaliation (3) for the employee's disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation. See *Taylor v. Board of Education of the City of Chicago*, 2014 IL App (1st) 123744, ¶ 52, 10 N.E.3d 383. At issue in this case is whether plaintiff made a disclosure to a government or law enforcement agency.

¶ 16    In *Brame v. City of North Chicago*, 2011 IL App (2d) 100760, ¶ 12, 955 N.E.2d 1269, the Second District construed section 15(b) of the Whistleblower Act to only require the employee to report the suspected violation to a government or law enforcement agency, and "no exceptions apply if a government or law-enforcement agency is also the employer." The *Brame* court explained that, if the legislature had intended the Whistleblower Act not to apply to reports made to an employee's own government or law enforcement agency employer, it would have expressly stated such a limitation. *Brame*, 2011 IL App (2d) 100760, ¶ 12, 955 N.E.2d 1269. It further noted, "[i]t is difficult to perceive that the legislature did not intend the

[Whistleblower] Act to protect a police officer from retaliation for reporting the illegal conduct of fellow officers to his superiors in the department." *Brame*, 2011 IL App (2d) 100760, ¶ 12, 955 N.E.2d 1269. Additionally, the *Brame* court distinguished the federal cases, which held an employee's reporting within the employee's own company of an alleged criminal violation did not fall under section 15(b) of the Whistleblower Act, because the employers in those cases were not government or law enforcement agencies. *Brame*, 2011 IL App (2d) 100760, ¶ 12, 955 N.E.2d 1269. The *Brame* case involved a lieutenant in the police department, who reported alleged criminal activity by the police chief to the mayor, who was the chief executive officer of the city and had general supervision and control of the police department. *Brame*, 2011 IL App (2d) 100760, ¶¶ 1, 7, 955 N.E.2d 1269.

¶ 17 Even assuming, *arguendo*, *Brame*'s holding that the disclosure to an employer in a government or law enforcement agency falls under section 15(b) of the Whistleblower Act is correct, the facts alleged in plaintiff's amended complaint are different from those in *Brame*. Here, plaintiff did not report Gleason's alleged violation of Illinois law to Gleason's superior. According to plaintiff's amended complaint, when Gleason requested the use of a police car and officer to drive him to the St. Louis airport, plaintiff "reported to Gleason that this personal use of public resources would be improper." After Gleason used the police car and officer, plaintiff "again disclosed to Gleason that his use of a police car and driver for his personal purposes was improper." Plaintiff further alleges Gleason, as a member of the Illinois Law Enforcement Training and Standards Board and a former police lieutenant, knew or should have known his personal use of police car and officer was improper. Thus, we address whether telling the alleged government violator his acts are improper constitutes "disclosing information" under section 15(b) of the Whistleblower Act.

¶ 18 When presented with an issue of statutory construction, the reviewing court's primary objective is to ascertain and give effect to the legislature's intent. *Murphy-Hylton*, 2016 IL 120394, ¶ 25. The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Murphy-Hylton*, 2016 IL 120394, ¶ 25. Moreover, we must evaluate the statute as a whole, "construing words and phrases in context to other relevant statutory provisions and not in isolation." *Murphy-Hylton*, 2016 IL 120394, ¶ 25. In doing so, we should not render any language superfluous. *Murphy-Hylton*, 2016 IL 120394, ¶ 25. "Additionally, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Murphy-Hylton*, 2016 IL 120394, ¶ 25.

¶ 19 The Merriam-Webster dictionary defines the verb "disclose" as "to expose to view" or "to make known or public." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/disclose (last visited Feb. 3, 2017). Thus, the employee must have exposed to view or made known information. Informing the violator his or her actions are improper does not expose to view or make known the alleged improper activity. That conclusion is consistent with the First District's explanation of the Whistleblower Act, which states:

> "The [Whistleblower] Act protects employees who *call attention* in one of two specific ways to illegal activities carried out by their employer. It protects employees who either contact a government agency to *report* the activity or refuse to participate in that activity. An employee who does not perform either of the specifically enumerated actions under the [Whistleblower] Act cannot qualify for its protections." (Emphases

- 5 -

added.) *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 62, 948 N.E.2d 652, 657 (2011).

Moreover, "the purpose of the Whistleblower Act is to protect statutorily defined employees who *report* violations of state or federal laws, rules, or regulations 'because the *reported wrongful conduct or unsafe condition* affected the health, safety[,] or welfare of Illinois residents as a whole.' " (Emphases added.) *Larsen v. Provena Hospitals*, 2015 IL App (4th) 140255, ¶ 47, 27 N.E.3d 1033 (quoting *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 627, 826 N.E.2d 1021, 1027 (2005)). Simply having a conversation with the wrongdoer about the impropriety of his or her actions is not exposing the alleged improper activity, making it known, or reporting the wrongful conduct. The fact the violator is the employee's boss does not alter the analysis, as the information is still not disclosed. We hold section 15(b) of the Whistleblower Act does not protect an employee who simply notes the impropriety of conduct with the alleged wrongdoer, as that does not constitute the disclosure of information under the Whistleblower Act.

¶ 20    Since plaintiff alleges the disclosure of information was made to Gleason, the violator, we agree with the circuit court plaintiff failed to state a cause of action under the Whistleblower Act. Given our conclusion, we do not address the parties' other arguments related to the Whistleblower Act.

¶ 21                                 B. Retaliatory Discharge

¶ 22    Plaintiff also challenges the circuit court's dismissal of his common-law retaliatory discharge claim. In Illinois, a longstanding rule exists that an at-will employee, such as plaintiff, may be discharged by his employer at any time and for any reason. *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 28, 21 N.E.3d 1183. In *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181-82, 384 N.E.2d 353, 357 (1978), our supreme court recognized the tort of retaliatory discharge as a narrow exception to the aforementioned rule. "To sustain a cause of action for retaliatory discharge, an employee must prove: (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities (causation), and (3) the discharge violates a clear mandate of public policy." *Michael*, 2014 IL 117376, ¶ 31, 21 N.E.3d 1183. On appeal, plaintiff asserts his discharge violated the public policy protecting whistleblowing and freedom of speech. The City asserts plaintiff did not raise an issue on the dismissal of retaliatory discharge claim arising from whistleblower activity. We disagree, as plaintiff asserts in his brief that the circuit court ignored his whistleblowing allegations raised in his retaliatory discharge claim.

¶ 23    While a precise definition of what constitutes a clearly mandated public policy does not exist, "a review of Illinois case law reveals that retaliatory discharge actions have been allowed in two settings: where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)); or where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.' " *Michael*, 2014 IL 117376, ¶ 30, 21 N.E.3d 1183. In those situations, "an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner." *Michael*, 2014 IL 117376, ¶ 30, 21 N.E.3d 1183. Thus, the situations necessitate a cause of action for retaliatory discharge to vindicate the public policy underlying the employee's activity and deter the employer's conduct that is inconsistent with that policy. *Michael*, 2014 IL 117376, ¶ 30, 21 N.E.3d 1183. Additionally,

our supreme court has stated, "public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878 (1981).

### 1. *Whistleblowing*

The allegations in plaintiff's amended complaint regarding whistleblowing are the same ones he makes in his claim under the Whistleblower Act. As with his Whistleblower Act claim, plaintiff does not allege facts showing he reported or disclosed information about Gleason's alleged violation of Illinois law. In other words, plaintiff did not blow the whistle on Gleason. The alleged facts in plaintiff's amended complaint simply show plaintiff twice told Gleason his actions were improper. Thus, like with his claim under the Whistleblower Act, plaintiff has failed to plead facts supporting an instance of whistleblowing and cannot plead a violation of a clear mandate of public policy based on whistleblowing.

### 2. *Freedom of Speech*

Moreover, on appeal, plaintiff alleges the circuit court erred by dismissing his retaliatory discharge claim based only on his statements in opposition to increasing taxes at a February 2, 2016, staff meeting. As stated, our supreme court has only recognized retaliatory discharge causes of action in the areas of Workers' Compensation claims and whistleblowing. See *Michael*, 2014 IL 117376, ¶ 30, 21 N.E.3d 1183. Plaintiff asserts Illinois law has also recognized a retaliatory discharge claim when an employee is discharged in retaliation for first amendment speech. However, the case cited by plaintiff recognized "a public policy favoring thorough investigation of police and fire department affairs and citizen compliance with such investigations." *Daniel v. Village of Hoffman Estates*, 165 Ill. App. 3d 772, 775, 520 N.E.2d 754, 756 (1987). There, the employee claimed she was fired for complying with an order from the board of fire and police commissioners to produce any documents relevant to a dismissal proceeding. *Daniel*, 165 Ill. App. 3d at 775, 520 N.E.2d at 756. The case only addressed the first amendment right to free speech in the context of a federal claim and not the retaliatory discharge claim.

The Illinois Supreme Court has addressed whether the first amendment establishes a clearly mandated public policy in the context of a private employer. In *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 523, 478 N.E.2d 1354, 1355 (1985), the employees sought to raise a claim of retaliatory discharge against their private employer based on, *inter alia*, their first amendment right to freedom of speech. Our supreme court concluded the employees' discharge did not violate any clear mandate of public policy. *Barr*, 106 Ill. 2d at 526, 478 N.E.2d at 1356. In reaching that conclusion, the court found "the constitutional guarantee of free speech is only a guarantee against abridgement by the government, Federal or State; the Constitution does not provide protection or redress against private individuals or corporations which seek to abridge the free expression of others." *Barr*, 106 Ill. 2d at 526, 478 N.E.2d at 1356. It also noted neither the Illinois Constitution nor the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, ¶ 1-10 *et seq.*) contain provisions mandating "the inclusion of the right of free speech into those rights which are applicable to the employer-employee relationship." *Barr*, 106 Ill. 2d at 528, 478 N.E.2d at 1357.

¶ 29 In this case, plaintiff's employer is a municipality, not a private employer. No Illinois case law has addressed whether the first amendment creates a public policy protecting speech made by public employees. The United States Supreme Court has recognized "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). In *Garcetti*, 547 U.S. at 418, the Supreme Court established a two-step inquiry into whether a public employee's speech is entitled to first amendment protection. The two-step inquiry was reaffirmed by the Supreme Court in its most recent case on the issue, *Lane v. Franks*, 573 U.S. ___, 134 S. Ct. 2369 (2014). The two-step inquiry is as follows:

" 'The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.' " *Lane*, 573 U.S. at ___, 134 S. Ct. at 2378 (quoting *Garcetti*, 547 U.S. at 418).

¶ 30 In his brief, plaintiff fails to set forth the two-step inquiry and explain how the facts alleged in his amended complaint satisfy that inquiry. Instead, he focuses on demonstrating his speech was on a matter of public concern. However, the main focus of the first step is distinguishing between employee speech and citizen speech. See *Lane*, 573 U.S. at ___, 134 S. Ct. at 2378. A matter of public concern is only part of the first inquiry and does not alone establish protected speech. Plaintiff fails to adequately argue and plead facts showing he was speaking as a citizen at Gleason's department head meeting. Accordingly, we find plaintiff has failed to show the facts in his amended complaint establish a clearly mandated public policy protecting his speech at the February 2016 meeting. Thus, the circuit court's dismissal with prejudice of his retaliatory discharge claim based on the first amendment was also proper.

¶ 31                                III. CONCLUSION
¶ 32 For the reasons stated, we affirm the Macon County circuit court's judgment.

¶ 33 Affirmed.