# Illinois Official Reports

## Supreme Court

<div style="border: 2px solid">

### *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394

</div>

| | |
|---|---|
| Caption in Supreme Court: | PAMELA MURPHY-HYLTON, Appellee, v. LIEBERMAN MANAGEMENT SERVICES, INC., *et al.*, Appellants. |
| Docket No. | 120394 |
| Filed | December 1, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Richard J. Turiello, of Grant & Fanning, of Chicago, for appellants. |
| | Law Office of Michael W. Rathsack, of Chicago (Timothy J. Ashe, Kristina K. Green, and Michael W. Rathsack, of counsel), for appellee. |
| | Christopher D. Willis, of Busse, Busse & Grassé, P.C., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel. |
| | Michael M. Viglione, of Ryan, Ryan & Landa, of Waukegan, for *amicus curiae* Illinois Trial Lawyers Association. |

Justices                    JUSTICE THEIS delivered the judgment of the court, with opinion.
Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     The question presented in this appeal involves the scope of the immunity provided under the Snow and Ice Removal Act (Act) (745 ILCS 75/0.01 *et seq.* (West 2010)). Plaintiff, Pamela Murphy-Hylton, slipped while walking on the sidewalk outside her condominium, sustaining personal injuries. She brought a negligence action in the circuit court of Cook County against defendants, Lieberman Management Services, Inc. (Lieberman), and Klein Creek Condominium (Klein Creek), alleging that a defective condition and negligent maintenance of the premises created an unnatural accumulation of ice, which caused her fall. The trial court granted defendants' motion for summary judgment, finding that the Act provided immunity to defendants. The appellate court reversed and remanded, ruling that the immunity under the Act did not bar plaintiff's cause of action. 2015 IL App (1st) 142804, ¶¶ 41, 47. For the reasons that follow, we affirm the appellate court.

¶ 2                          BACKGROUND

¶ 3     Plaintiff was an owner and resident of a condominium unit at the Klein Creek Condominium complex in the Village of Carol Stream, Illinois. The common elements of the property were owned and controlled by defendant, Klein Creek. The Klein Creek Condominium Association retained defendant, Lieberman Management Services, Inc., to manage the property.

¶ 4     In early February 2011, a large snowstorm hit Carol Stream, producing snowfall in excess of 20 inches. On February 7, 2011, the snow removal and landscaping service hired by the association cleared snow and ice from the sidewalks of the complex. Eleven days later, on the morning of February 18, 2011, plaintiff left her condominium unit and was walking on the sidewalk behind the building on her way to the adjacent parking lot. As she was walking, she slipped and fell, suffering a fracture to her leg, knee, and hip. She filed suit, claiming that she fell on an unnatural accumulation of ice on the sidewalk. In her fourth amended complaint, she alleged, *inter alia*, that defendants were negligent in failing to properly direct the drainage of water and melted snow on the premises, failing to repair defective sidewalks, and failing to repair downspouts to prevent an unnatural accumulation of ice on the sidewalk. She additionally alleged that defendants failed to comply with various local building construction and maintenance codes.

¶ 5     During discovery, plaintiff testified that the weather on the morning she fell was cold and sunny with no precipitation. She estimated the temperature was in the twenties. There had been no precipitation since the last snowfall in early February. When she first stepped outside, the sidewalks appeared clear, and she did not see any ice prior to her fall. She noticed the patch of ice after she fell, which she described as about the size of a letter-sized piece of paper. She believed that the ice that caused her fall resulted from water that had accumulated on either side of the sidewalk. She observed that water would run off from the downspouts affixed to

either side of the building onto the grass. From there, the water would collect on the sidewalk, where it would freeze instead of draining onto the parking lot. She never reported the drainage issue to defendants.

¶ 6    Other witnesses were deposed regarding their observations of the condition of the premises where plaintiff fell. Plaintiff's neighbor, Roger McGowan, stated that he slipped and fell on ice in the same area of the sidewalk where plaintiff fell that same morning at about 6 a.m. but did not report it to defendants. He observed that the issue of water collecting on the sidewalk had been present since he moved to the complex in 2008. From his observations, the sidewalks appeared to be lower than where the foundation of the building sits and lower than where the downspouts are positioned. After a heavy rain, the water would run away from the building and toward the sidewalk, where the water would collect. Snow from areas close to the building would melt and then run toward the sidewalk. When the weather got cold again, water would freeze up across the sidewalk. McGowan was also told by another resident that they could not put mulch down because the mulch would all wash away from the water draining down from the gutters and the downspouts. McGowan never complained about the drainage issues to anyone at Klein Creek or to Lieberman.

¶ 7    Michael Melson, plaintiff's brother, observed standing water on the sidewalk in the area where plaintiff fell either that night or the next day. He also slipped and almost fell on the same sidewalk a day or two after plaintiff's fall. According to Melson, water would pool on the sidewalk after a rainfall or melting snow. Based on his observations, the sidewalk was lower than the grass and was graded toward the grass instead of the parking lot, allowing water and dirt to run down onto it and allowing patches of ice to form.

¶ 8    Jeff Graves, the president of the Klein Creek Condominium Association at the time of plaintiff's fall, stated that prior to her fall he was aware of water collecting on and around the sidewalks in other areas of the complex, especially during heavy rainstorms, but he was not aware of similar water pooling in the area behind the building where plaintiff fell. The only accumulation of water he ever saw in that location would be from puddles after it rained. Graves inspected the area where plaintiff fell several hours after the fall, and the sidewalk was "bone dry." He did not see any ice. At that time, the temperature was in the forties or fifties, and it was sunny.

¶ 9    April Knourek, the property manager prior to plaintiff's fall, and Kyla Mercer, the manager at the time of plaintiff's fall, both testified regarding maintenance of the premises and drainage work that had been performed at the property. Knourek stated that drainage work was prompted by residents in another area of the complex, who were having problems with water pooling up near the foundation of their building and with mulch and dirt being washed away by the water. Neither manager recalled any problems with sidewalks, and both believed that most of the drainage issues had occurred on the courtyard side of the buildings and not in the back of the buildings where the sidewalks are located. Mercer did not inspect the sidewalk where plaintiff fell after the incident.

¶ 10    When shown photographs of the sidewalk area where plaintiff fell, which were taken a month after the fall, both managers acknowledged that some of the photographs depicted standing water on the sidewalk and mud and debris on the sidewalk from the grassy area. Knourek agreed that the problem with mud and debris was consistent with the type of drainage issues residents had complained about previously in other areas of the property. She agreed

that standing water on the sidewalk could freeze and cause an icy condition, but she did not believe it would require intervention. Mercer acknowledged that one of the photographs depicted the grassy area adjacent to the sidewalk at a higher level than the sidewalk and the carpenter's level in the photograph showed the sidewalk slightly slanted toward the grassy area. They both stated that during their time as property manager, they were not aware of any issues with standing water on the sidewalk where plaintiff fell.

¶ 11   David Selio was the owner of the snow and ice removal and landscaping service hired by the association and was also a resident of Klein Creek. He testified that under the contract, he would perform snow and ice removal services when two or more inches of snow fell but for any snowfall less than two inches, he was required to get approval from the association. He last cleared the snow on February 7, 2011, about 11 days prior to plaintiff's fall. He was aware that prior to plaintiff's fall, drain tile was installed in another area of the complex to redirect the flow of water on the property away from the foundation, due to soil erosion. In 2010, the Association accepted his bid for installation of drain tile work in another area of the complex to improve drainage near the foundation. Eight months after plaintiff's fall, in October 2011, additional drainage redirection work was done on the premises, including work to the area behind the building where plaintiff fell.

¶ 12   Defendants subsequently filed a joint motion for summary judgment, arguing, in part, that plaintiff's slip and fall claim was barred by the immunity provided to residential owners and operators under the Snow and Ice Removal Act. 745 ILCS 75/0.01 *et seq.* (West 2010). In ruling on the issue, the trial court recognized a split of authority in the appellate court regarding the scope of the immunity under the Act. In *Greene v. Wood River Trust*, 2013 IL App (4th) 130036, ¶ 17, the court held that the plain language of the Act limits immunity from liability to those claims arising out of negligent snow and ice removal efforts. Alternatively, in *Ryan v. Glen Ellyn Raintree Condominium Ass'n*, 2014 IL App (2d) 130682, ¶ 20, the court construed the scope of the immunity more broadly to include immunity from liability for claims of negligence arising from a defective condition on the property or negligent maintenance of the premises. The trial court, relying on the interpretation in *Ryan*, granted defendants' motion for summary judgment.

¶ 13   The appellate court reversed the trial court's grant of summary judgment on the basis that the immunity provided under the Act did not bar plaintiff's claims. 2015 IL App (1st) 142804. The court reasoned that the immunity conferred by the Act did not apply to plaintiff's claims "for the simple reason that plaintiff's complaint does not contain any allegations of negligence relating to snow or ice removal efforts." *Id.* ¶ 39. The court emphasized that the Act provides "a clear, concise statement of the conduct, *i.e.*, the removal of ice and snow, that the Act intends to promote." *Id.* ¶ 41. The court found that, consistent with the court's interpretation in *Greene*, the Act, when read as a whole, "requires that the snow or ice that causes a plaintiff's injuries must be the result of the acts or omissions in defendants' actual snow removal efforts," rather than the result of a premises defect. *Id.* The court held that the Act's plain and unambiguous language "makes no mention of protecting any type of negligence outside of the ordinary negligence that results in an unnatural accumulation after snow removal efforts." *Id.* ¶ 42.

¶ 14   We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). Additionally, we allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief

in support of plaintiff and the Illinois Association of Defense Trial Counsel to file an *amicus curiae* brief in support of defendants. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 15                                                    ANALYSIS

¶ 16     The principles governing our standard of review are well settled. A motion for summary judgment will be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). We review the trial court's decision on a motion for summary judgment *de novo*. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 20.

¶ 17     In seeking and obtaining summary judgment, defendants argued, and the trial court held, that they were entitled to judgment as a matter of law because they were immune from liability under the Act. Thus, we are ultimately presented with an issue of statutory construction, which is also a question of law subject to *de novo* review. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 19.

¶ 18     To understand the scope of the immunity provided under the Act, it is necessary to first understand the context in which the immunity arises, as the Act is only implicated where there would otherwise be liability. Where the plaintiff seeks recovery based on the defendant's alleged negligence, the plaintiff must plead and prove the existence of a duty owed by the defendant, a breach of that duty, and injury proximately resulting from that breach. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12.

¶ 19     In the context of liability of a landowner for a fall on snow and ice, the general rule in Illinois historically has been that under the common law, a landowner owes no duty to remove natural accumulations of snow and ice. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010); *Riccitelli v. Sternfeld*, 1 Ill. 2d 133, 137 (1953); *Graham v. City of Chicago*, 346 Ill. 638, 641 (1931). The rule recognizes that to hold otherwise would create an unreasonable burden of vigilance when considering that snowstorms cannot be foreseen or controlled and recognizes " 'the climatic vagaries of this area with its unpredictable snowfalls and frequent temperature changes.' " *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 748 (2005) (quoting *Lapidus v. Hahn*, 115 Ill. App. 3d 795, 801 (1983)).

¶ 20     However, landowners do owe a duty of reasonable care to prevent unnatural accumulations of ice and snow on their premises where they have actual or constructive knowledge of the dangerous condition. *Graham*, 346 Ill. at 643. Thus, liability may arise where snow or ice "accumulated by artificial causes or in an unnatural way or by a defendant's own use of the area concerned and creation of the condition, and where it has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition." *Fitzsimons v. National Tea Co.*, 29 Ill. App. 2d 306, 318 (1961).

¶ 21     Various theories of liability for falls on an unnatural accumulation of ice have been recognized, including (1) a defective condition or negligent maintenance of the premises and (2) a voluntary undertaking theory. *Webb v. Morgan*, 176 Ill. App. 3d 378, 382-83 (1988). Under the negligent maintenance cases, courts recognize that the construction and maintenance of landowners' premises are matters within their control. Therefore, to hold them to a duty of reasonable care under these circumstances does not impose an undue burden on them not to "add to the difficulties facing Illinois residents from natural accumulations of ice

and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises." *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 711 (1999). See, *e.g.*, *McLean v. Rockford Country Club*, 352 Ill. App. 3d 229, 238 (2004) (alleging that specific building defects, including improperly hung and sized gutters and improperly pitched overhang roof, caused an unnatural accumulation of ice); *Lapidus*, 115 Ill. App. 3d at 800-01 (alleging that water dripped from leaky roof and collected in a depression on the porch and froze, causing an unnatural accumulation); *McCann v. Bethesda Hospital*, 80 Ill. App. 3d 544, 550-51 (1979) (excessive slope of the parking lot presented a question of fact whether the ice causing the fall was an unnatural accumulation).

¶ 22    Alternatively, under the voluntary undertaking theory, liability has been recognized where the landowner voluntarily undertakes the task of removing a natural accumulation of snow and ice and does so negligently, creating an unnatural accumulation on his property. *Tzakis*, 356 Ill. App. 3d at 746. See, *e.g.*, *Sims v. Block*, 94 Ill. App. 2d 215 (1968) (landowner created an unnatural condition when he plowed snow up against the plaintiff's parked car, creating a 5- to 6-inch ridge of ice along the car where plaintiff fell); *Fitzsimons*, 29 Ill. App. 2d at 314 (snow negligently piled in an area of a parking lot where alternate thawing and freezing caused it to drain across the lot and freeze, forming an unnatural accumulation of ice).

¶ 23    The problem with liability arising from a voluntary undertaking theory was that it potentially encouraged inaction. Property owners risked liability if their voluntary actions in clearing the snow and ice after a snowstorm were construed as negligently creating an unnatural accumulation. See Michael J. Polelle, *Is the Natural Accumulation Rule All Wet?*, 26 Loy. U. Chi. L.J. 631, 649 (1995) ("If taken seriously, the rule favors inaction over action.").

¶ 24    Since 1979, the General Assembly has provided immunity under the Snow and Ice Removal Act to residential property owners for liability in connection with their snow or ice removal efforts in order to encourage them to "clean the sidewalks abutting their residences of snow and ice." 745 ILCS 75/1, 2 (West 2010). The question before us is whether, in addition to immunizing claims of liability under a voluntary undertaking theory, the immunity extends to claims of liability for negligence arising from a defective condition or a failure to maintain the premises that causes an unnatural accumulation of ice on the sidewalk.

¶ 25    When presented with an issue of statutory construction, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 22. The best indicator of legislative intent is the language employed in the statute, which must be given its plain and ordinary meaning. *Id.* We must view the statute as a whole, construing words and phrases in context to other relevant statutory provisions and not in isolation. *Bowman v. Ottney*, 2015 IL 119000, ¶ 9. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. Additionally, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.*

¶ 26    Specifically, section 2 of the Act provides for immunity as follows:

"Any owner, lessor, occupant or other person in charge of any residential property, or any agent of or other person engaged by any such party, who removes or attempts to remove snow or ice from sidewalks abutting the property shall not be liable for any

personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions unless the alleged misconduct was willful or wanton." 745 ILCS 75/2 (West 2010).

¶ 27        The General Assembly has expressly articulated the public policy of the State and purpose for the immunity under the Act in section 1 as follows:

> "It is declared to be the public policy of this State that owners and others residing in residential units be encouraged to clean the sidewalks abutting their residences of snow and ice. The General Assembly, therefore, determines that it is undesirable for any person to be found liable for damages due to his or her efforts in the removal of snow or ice from such sidewalks, except for acts which amount to clear wrongdoing, as described in Section 2 of this Act." 745 ILCS 75/1 (West 2010).

Thus, section 1 of the Act reflects a legislative determination that it is beneficial to encourage residential property owners[1] to clear their sidewalks of snow and ice, conduct which they otherwise would have no common-law duty to perform. Therefore, the General Assembly deemed it "undesirable" for any person to be found liable "due to" his or her snow or ice removal efforts. 745 ILCS 75/1 (West 2010).

¶ 28        To accomplish this objective, the General Assembly has provided that any residential property owner "who removes or attempts to remove snow or ice" is not liable for injuries "allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions," unless the conduct was willful or wanton. 745 ILCS 75/2 (West 2010). Reading section 2 as a whole, the section limits its scope to a residential property owner "who removes or attempts to remove snow or ice" on the sidewalk and who, as a result of their negligent "acts or omissions," allegedly causes a "snowy or icy condition of the sidewalk." 745 ILCS 75/2 (West 2010). Accordingly, section 2 of the Act immunizes residential property owners from liability for negligent snow and ice removal efforts. See, *e.g.*, *Divis v. Woods Edge Homeowners' Ass'n*, 385 Ill. App. 3d 636, 638 (2008) (where plaintiff alleged that "incomplete and improper" snow removal efforts resulted in ice accumulation, causing his fall, the Act immunized defendants from liability).

¶ 29        In keeping with our rules of statutory construction, we cannot construe a statute that is in derogation of the common law "beyond what the words of the statute express[ ] or beyond what is necessarily implied from what is expressed." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69 (2004). Since the immunity provided under the Act was enacted in derogation of the common law, it must be construed strictly. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003); *Adams*, 211 Ill. 2d at 69-70 ("Illinois courts have limited all manner of statutes in derogation of the common law to their express language, in order to effect the least—rather than the most—change in the common law"). Nothing in the plain language of section 2 of the Act evidences an intent by the General Assembly to otherwise immunize liability for falls on accumulations of ice that result due to circumstances unrelated to negligent snow and ice removal efforts.

---

[1]For ease of reference, when we refer to residential property owners, we also intend to include "lessor, occupant or other person in charge of any residential property, or any agent of or other person engaged by any such party," as provided for by the Act. 745 ILCS 75/2 (West 2010).

¶ 30     To hold otherwise would represent an unwarranted expansion of the legislatively established parameters of the Act and would be inconsistent with the Act's policy objective. Defendants' suggested construction would reward a landowner's passivity in failing to exercise due care in maintaining his property in a reasonably safe condition and would turn the purpose for the immunity on its head. As explained, the purpose of the immunity is to reward those residential property owners who voluntarily undertake a duty where there otherwise would be none. The purpose was not to encourage the failure to otherwise maintain the premises in a reasonably safe condition.

¶ 31     The appellate court in this case and in other recent appellate court decisions has interpreted the Act consistently with our construction here. See *Greene*, 2013 IL App (4th) 130036; *Reed v. Country Place Apartments-Moweaqua I, L.P.*, 2016 IL App (5th) 150170. Nevertheless, defendants maintain that we should follow the Second District's interpretation of the Act in *Ryan v. Glen Ellyn Raintree Condominium Ass'n*, 2014 IL App (2d) 130682. In *Ryan*, the appellate court rejected the contention that the immunity under the Act extends only to liability for ice accumulations that were negligently created by the owner's snow and ice removal efforts because it found that "section 2 neither expresses nor necessarily implies an intent to exclude" immunity based on the source of the accumulation. *Id.* ¶ 16. The court held that the plaintiff's construction would improperly read exceptions into the provision and would therefore violate the canon that prohibits reading exceptions, limitations, or conditions that the legislature did not express. *Id.*

¶ 32     The *Ryan* court's interpretation is contrary to the plain language of the Act and would improperly expand the immunity beyond its expressly stated language. As we explained, the Act expressly immunizes liability for negligent snow and ice removal efforts. To the extent the Act immunizes negligent "omissions," the language specifically limits those "omissions" to those that result due to the actual undertaking of snow and ice removal efforts, not those "omissions" that result from an otherwise negligent failure to maintain the premises. 745 ILCS 75/2 (West 2010).

¶ 33     Furthermore, the *Ryan* court's overly broad construction would violate our obligation to narrowly construe immunity statutes that are established in derogation of the common law (*Van Meter*, 207 Ill. 2d at 368) and would violate our duty to "effect the least—rather than the most—change in the common law" (*Adams*, 211 Ill. 2d at 69-70). Nothing in the express language of the Act indicates an intent to completely eviscerate the residential property owner's duty of reasonable care to prevent unnatural accumulations of ice and snow.

¶ 34     Finally, the *Ryan* court's interpretation would contravene the stated public policy underlying the Act, which was not to protect homeowners who negligently maintain or construct their premises but, rather, to encourage homeowners to engage in safety measures they have no duty to perform.

¶ 35     Applying the proper construction here, the immunity provided under the Act does not insulate defendants from the theory of liability in the instant case. Plaintiff's theory of the case is not that defendants negligently undertook efforts to remove a natural accumulation of snow or ice from the sidewalk and thereby caused an unnatural accumulation of ice on the sidewalk. Indeed, the last snow and ice removal efforts were undertaken 11 days prior to plaintiff's fall. Rather, plaintiff's theory is that the ice formed on the sidewalk in an unnatural way due to an otherwise defective condition of the property and that defendants were negligent in failing to

make reasonable efforts to maintain the property to eliminate the danger created after reasonable notice of the condition.

¶ 36    Whether plaintiff has presented sufficient evidence to present that theory of negligence to the trier of fact and whether she can prove that theory at trial are yet to be determined in this case. The trial court limited its ruling solely to the immunity question. We merely hold that the Act is not an affirmative defense to plaintiff's theory of negligence.

¶ 37    Lastly, defendants argue, relying on *Pikovsky v. 8440-8460 North Skokie Boulevard Condominium Ass'n*, 2011 IL App (1st) 103742, ¶ 13, that a contract for snow removal services is *prima facie* evidence of snow and ice removal efforts. From that premise, they maintain that their conduct in contracting for snow and ice removal services brings them within the scope of the Act.

¶ 38    We do not read *Pikovsky* as suggesting that a mere contract for snow removal services would provide immunity from liability for injuries allegedly caused by the snowy or icy condition of the sidewalk. Rather, in *Pikovsky*, the plaintiff asserted that she slipped and fell on the rear entrance sidewalk of her condominium due to "icy snow mounds." *Id.* ¶ 4. The plaintiff claimed that the snow mounds were formed by snow that was plowed from the parking lot onto the rear entrance sidewalk, creating "an unsafe and dangerous condition of unnatural accumulation." *Id.* ¶ 5.

¶ 39    The court found that the defendants had a contract for snow removal services and that the snow removal companies performed their duties under the contract to clear snow and ice from the premises. The fact that they failed to remove the snow and ice mounds from the rear entrance sidewalk was an "omission in their overall snow removal efforts," which was subject to immunity under the Act. *Id.* ¶ 13. Consequently, *Pikovsky* does not stand for defendants' stated proposition. Moreover, the case is distinguishable where, unlike the present case, the plaintiff alleged that negligent snow removal efforts caused the unnatural accumulation on the sidewalk. Here, plaintiff alleged that defendants negligently maintained the premises due to a defective condition on the property.

¶ 40                                 CONCLUSION

¶ 41    The Snow and Ice Removal Act provides immunity to residential property owners from claims of liability for injuries allegedly caused by icy sidewalks that result from negligent snow and ice removal efforts, but it does not extend to immunize them from claims of liability for injuries allegedly caused by icy sidewalks that result from an otherwise negligent failure to maintain the premises. Accordingly, we affirm the judgment of the appellate court, which reversed the trial court's order granting summary judgment to defendants and remanded for further proceedings.

¶ 42    Affirmed.