# Illinois Official Reports

## Appellate Court

> *Oak Lawn Professional Firefighters Ass'n, Local 3405 v. Village of Oak Lawn*,
> 2018 IL App (1st) 172079

| | |
|---|---|
| Appellate Court Caption | OAK LAWN PROFESSIONAL FIREFIGHTERS ASSOCIATION, LOCAL 3405, IAFF, on Behalf of Its Members, and WILLIAM ROSER, TIMOTHY RADKE, and TODD STANFORD, Individually and on Behalf of All Similarly Situated Individuals, Plaintiffs-Appellees, v. THE VILLAGE OF OAK LAWN, a Municipal Corporation, THE BOARD OF TRUSTEES OF THE VILLAGE OF OAK LAWN, TIM DESMOND, in His Official Capacity, ALEX G. OLEJNICZAK, in His Official Capacity, ROBERT J. STREIT, in His Official Capacity, TERRY VORDERER, in His Official Capacity, WILLIAM R. STALKER, in His Official Capacity, MIKE CARBERRY, in His Official Capacity, MAYOR SANDRA BURY, in Her Official Capacity, and VILLAGE MANAGER LARRY DEETJEN, in His Official Capacity, Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1-17-2079 |
| Filed | July 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-9908; the Hon. Sanjay T. Tailor, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Paul A. O'Grady and Jennifer L. Turiello, of Peterson, Johnson & Murray-Chicago, LLC, of Chicago, for appellants. |
|---|---|
| | Lisa B. Moss and Susan M. Matta, of Carmell Charone Widmer Moss & Barr, of Chicago, for appellees. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.<br>Presiding Justice Cobbs and Justice Lavin concurred in the judgment and opinion. |

## OPINION

¶ 1    This appeal involves an action for declaratory judgment and for review of an award in interest arbitration proceedings under the Illinois Public Labor Relations Act (Labor Relations Act) (5 ILCS 315/1 *et seq.* (West 2016)). It arises out of the negotiations for a 2015-17 collective bargaining agreement between the Oak Lawn Professional Firefighters Association, Local 3405, IAFF (Union) and the Village of Oak Lawn (Village). During those negotiations, the Union and the Village were unable to agree on a residency requirement for employees to be covered by the collective bargaining agreement. Their failure to agree led to the issue being submitted to interest arbitration. While that was pending, the Union and three of its members filed this action seeking a declaratory judgment that section 10-2.1-6.3(c) of the Illinois Municipal Code prohibited the Village from imposing residency requirements on current employees covered by the collective bargaining agreement. 65 ILCS 5/10-2.1-6.3(c) (West 2016).

¶ 2    After this case was filed but before the trial court ruled on the declaratory judgment, the interest arbitrator issued an award providing that covered employees were required to live within the state of Illinois. However, the award further provided that, in light of this litigation, if the court ultimately held that Illinois law permitted covered employees to reside outside of Illinois, the provision of the award requiring such employees to live within the state would be null and void. The trial court ultimately granted the declaratory judgment sought by the plaintiffs and ruled that section 10-2.1-6.3(c) of the Municipal Code prohibited residency requirements from being imposed on covered employees who were hired prior to the issuance of the interest arbitrator's award. The trial court thus reversed the interest arbitrator's award requiring in-state residency for covered employees. This appeal followed.

¶ 3                                  BACKGROUND

¶ 4    The plaintiffs in this case are the Union and three of its members. The three individual plaintiffs are residents of Indiana, and each of them has been employed by the Village in its fire service for over 20 years. The defendants in this case are the Village, its board of trustees, and

various of its officers. For ease of reference, the defendants collectively will be referred to as "the Village."

¶ 5 Since 1981, the Union and the Village have been parties to a series of collective bargaining agreements. None of those collective bargaining agreements has ever included residency requirements for firefighters. As the Union and the Village were negotiating the terms of their 2015-17 collective bargaining agreement, the Village presented various proposals seeking to add a residency requirement for firefighters. The Union rejected all the Village's proposals. Instead, the Union insisted upon the continuation of the status quo, which was that the collective bargaining agreement remain silent on the issue and therefore contain no residency requirements.

¶ 6 As the parties were not able to reach an agreement on this and other issues, they proceeded to compulsory interest arbitration as provided by section 14 of the Labor Relations Act. 5 ILCS 315/14 (West 2016). At the outset of those proceedings, the Union disputed that residency requirements were an issue about which it had a duty to bargain. Its position was that the issue of whether residency requirements could be imposed on current employees who were not previously subject to them was a matter specifically provided for by section 10-2.1-6.3(c) of the Municipal Code. 65 ILCS 5/10-2.1-6.3(c) (West 2016). The pertinent provision of that statute states, "Residency requirements in effect at the time an individual enters the fire service of a municipality cannot be made more restrictive for that individual during his or her period of service for that municipality, or be made a condition of promotion ***." *Id.*

¶ 7 The Village's position was that its residency proposal was an issue about which the Union had a duty to bargain. Its position was that the issue was controlled by section 14(i) of the Labor Relations Act, which provides in pertinent part that, with respect to firefighters, "the arbitration decision shall be limited to wages, hours, and conditions of employment (*** including residency requirements in municipalities with a population under 1,000,000, but those residency requirements shall not allow residency outside of Illinois)." 5 ILCS 315/14(i) (West 2016). The Village's position was that because section 14(i) lists residency requirements as one of the topics to which an interest arbitrator's decision "shall be limited" and prohibits an arbitrator from issuing an award allowing residency outside Illinois, this section governed the issue.

¶ 8 According to the rules and regulations of the Illinois Labor Relations Board, an interest arbitrator's award is not to consider an issue if one of the parties objects in good faith to the presence of that issue before the arbitrator on the ground that the issue does not involve a subject over which the parties are required to bargain. 80 Ill. Adm. Code 1230.90(k) (2003). However, an exception to that rule exists, whereby the arbitrator has the option to consider an issue to which one party objects if the general counsel of the Illinois Labor Relations Board issues a declaratory ruling that the issue is a subject over which the parties are required to bargain. *Id.* Thus, after the Union objected that the Village's proposed residency requirement was not a subject over which the parties were required to bargain, the Village filed a unilateral petition to obtain a declaratory ruling from the general counsel of the Illinois Labor Relations Board about whether the Labor Relations Act required the parties to bargain over this issue. 80 Ill. Adm. Code 1200.143(b) (2016).

¶ 9 The general counsel issued a declaratory ruling determining that the Village's proposed residency requirement was a mandatory subject of bargaining. The general counsel concluded the Village's proposed residency requirement would not contravene section 10-2.1-6.3(c) of

the Municipal Code. The general counsel interpreted that statute as only prohibiting a municipality from establishing residency requirements that are more restrictive than residency requirements "in effect" at the time an individual enters the fire service. It reasoned that the absence of any residency requirement "cannot reasonably be construed as an affirmative 'requirement' that is 'in effect' under the terms of the Municipal Code." Thus, it concluded that the Village's proposed residency requirement could not be considered more restrictive than any prior residency requirement in effect, as no such requirement had ever existed within the Village. For these reasons, the general counsel determined that the Village's proposed residency requirement did not seek the Union's waiver of statutory rights its members had under the Municipal Code.

¶ 10    The general counsel's declaratory ruling went on to address the Union's proposal to maintain the status quo of silence in the collective bargaining agreement on the issue of residency. It reasoned that contractual silence on the issue would amount to no restriction on residency at all. It ruled that if the interest arbitrator were to grant the Union's proposal, the arbitration award would effectively be allowing residency outside of Illinois and would therefore contravene section 14(i) of the Labor Relations Act. 5 ILCS 315/14(i) (West 2016).

¶ 11    Pursuant to the general counsel's declaratory ruling that the Village's residency requirement was a subject over which the parties were required to bargain, the issue became one that the interest arbitrator could consider despite the Union's objection. 80 Ill. Adm. Code 1230.90(k) (2003). The parties thus proceeded with the interest arbitration. After the general counsel issued its declaratory ruling and the hearings in the interest arbitration were completed, but before the interest arbitration award was issued, the plaintiffs filed this action. In their complaint, the plaintiffs sought a declaratory judgment that the Village was precluded from imposing residency requirements on covered employees hired prior to the issuance of the arbitrator's award, based on the statutory rights provided to them under section 10-2.1-6.3(c) of the Municipal Code. 65 ILCS 5/10-2.1-6.3(c) (West 2016).

¶ 12    After this case was filed, the interest arbitrator issued his award. It provided that the following language would be incorporated into the parties' collective bargaining agreement:

"1. All Bargaining Unit members are required to live within the State of Illinois.

2. Any Bargaining Unit employee living outside the State of Illinois at the time of the issuance of this Award will have until the end of the contract, December 31, 2017, or any agreed upon extension thereto, to notify the Village of his/her intent to move to the State of Illinois and to provide the time frame for said move to the State of Illinois.

3. This matter is currently being litigated by the parties. In the event that a court of competent jurisdiction issues a final order indicating that the Union's proposal, that is, the status quo, is legal under State of Illinois law, this provision shall be null and void and the status quo shall be immediately reinstated."

In analyzing this issue in his written decision, the interest arbitrator noted that the declaratory ruling of the general counsel of the Illinois Labor Relations Board had specifically provided that granting the Union's proposal would effectively contravene the prohibition in section 14(i) of the Labor Relations Act that an arbitration decision "may include residency requirements *** but those residency requirements shall not allow residency outside of Illinois." 5 ILCS 315/14(i) (West 2016). The arbitrator found that the general counsel's declaratory ruling constituted "a definitive statement on the interpretation of the [Labor Relations] Act," which was the statute from which he derived his authority to issue his

arbitration award. He further stated that whether the Municipal Code superseded the Labor Relations Act on the issue of residency requirements was "a question for the courts, where litigation is currently pending," and not an issue for him to determine as an interest arbitrator. He stated that he found he had "no choice but to impose an Illinois residency requirement," due to the language of section 14(i) of the Labor Relations Act and the general counsel's declaratory ruling.

¶ 13    Following the issuance of the arbitration award, the plaintiffs amended their complaint in the trial court to add a second count for review of the arbitrator's order under section 14(k) of the Labor Relations Act. *Id.* § 14(k). In summary, the plaintiffs alleged in that second count that the arbitrator had exceeded his authority by issuing the portion of the arbitration award that imposed a residency requirement on them because they had a statutory right under section 10-2.1-6.3(c) of the Municipal Code to be free from residency requirements that were more restrictive than those that had been in effect when they were hired by the Village.

¶ 14    Both parties had filed dispositive motions on the original complaint, which they agreed would stand as to the amended complaint. The Village had filed a motion to dismiss under section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2016). The plaintiffs had filed a motion for summary judgment. *Id.* § 2-1005(a). Both parties also filed supplemental briefs arguing for ruling in their favor concerning the trial court's review of the arbitrator's award. 5 ILCS 315/14(k) (West 2016).

¶ 15    After hearing oral argument, the trial court granted the plaintiffs' motion for summary judgment and denied the Village's motion to dismiss. The trial court granted a declaratory judgment that the plaintiffs have the right, under section 10-2.1-6.3(c) of the Municipal Code, to maintain the same residency requirements that were in effect at the time of their hire throughout the duration of their employment with the Village, such that no residency requirement can be imposed on employees hired prior to the issuance of the arbitrator's award. The trial court's order further reversed the arbitrator's award concerning residency. The Village appealed.

¶ 16                                                    ANALYSIS

¶ 17    This appeal arises from a trial court's entry of summary judgment. Summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. The parties are in agreement that no genuine issue of material fact exists and that the resolution of this case turns on the interpretation of several statutes, namely sections 7, 14, and 15 of the Labor Relations Act (5 ILCS 315/7, 14, 15 (West 2016)) and section 10-2.1-6.3 of the Municipal Code (65 ILCS 5/10-2.1-6.3 (West 2016)). The interpretation of these statutes is a matter of law for the court and thus presents an issue appropriate for summary judgment. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 18. Our review of summary judgment rulings and issues of statutory interpretation is *de novo*. *Id.*

¶ 18    When presented with issues of statutory interpretation, our primary objective is to ascertain and give effect to the intent of the legislature. *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 22. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* We view the statute as a whole, construing

words and phrases in context to other relevant statutory provisions and not in isolation. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25. In interpreting the statute, we may consider the reason for the law, the problem sought to be remedied, and the consequences of construing the statute one way or another. *Id.*

¶ 19    On appeal, the Village argues that the provisions of the Labor Relations Act control the outcome of this case because the case arises out of interest arbitration proceedings that are exclusively governed by the Labor Relations Act. The Village relies principally on section 14(i) of the Labor Relations Act, which addresses the topics to which an interest arbitration decision "shall be limited," includes residency requirements among that list of topics, and specifically prohibits an arbitration decision that allows residency outside of Illinois. The text of the pertinent portion of section 14(i) upon which the Village relies states:

> "In the case of fire fighter, and fire department or fire district paramedic matters, the arbitration decision shall be limited to wages, hours, and conditions of employment (including manning and also including residency requirements in municipalities with a population under 1,000,000, but those residency requirements shall not allow residency outside of Illinois) ***." 5 ILCS 315/14(i) (West 2016).

The Village argues that the plain language of section 14(i) prohibits the arbitrator from issuing a decision accepting the Union's status quo proposal that the collective bargaining agreement would be silent on the issue of residency requirements because in effect this would be an arbitration decision allowing residency outside Illinois for covered employees. The Village argues that the interest arbitrator correctly recognized this fact and properly issued an arbitration award that disallowed residency outside Illinois.

¶ 20    The Village argues that section 10-2.1-6.3(c) of the Municipal Code (65 ILCS 5/10-2.1-6.3(c) (West 2016)) should not be part of the appropriate analysis. It points out that section 15 of the Labor Relations Act provides in part, "In case of any conflict between the provisions of this Act and any other law *** relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." 5 ILCS 315/15(a) (West 2016). It further cites a provision of section 7 of the Labor Relations Act, which provides, "If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing clauses which either supplement, implement, or relate to the effect of such provisions in other laws." *Id.* § 7. The Village argues that these provisions indicate that the Labor Relations Act takes precedence over any other statutes that conflict with its provisions, and this includes section 10-2.1-6.3(c) of the Municipal Code (65 ILCS 5/10-2.1-6.3(c) (West 2016)).

¶ 21    For their part, the plaintiffs also rely on section 7 of the Labor Relations Act (5 ILCS 315/7 (West 2016)), although they argue that a different provision of that section should be the starting point for the analysis in this case. They argue that the analysis starts not with the topics that an interest arbitration decision could include but with what duty they had to bargain collectively about the topic in the first instance. Section 7 addresses the duty that a public employer and the labor organization representing its employees have to bargain collectively. *Id.* The provision of section 7 upon which the plaintiffs rely states, "The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, *not specifically provided for in any other*

*law* or not specifically in violation of the provisions of any law." (Emphasis added.) *Id.* The plaintiffs argue that the provision of section 10-2.1-6.3(c) of the Municipal Code, which prohibits residency restrictions from being made more restrictive during the period of a firefighter's service to a municipality, is the kind of "other law" to which the above-quoted provision of section 7 applies and limits their duty to bargain collectively in the first instance. Thus, it is the plaintiffs' position that section 10-2.1-6.3(c) of the Municipal Code limits their duty to bargain over residency restrictions and they were free to insist upon their right under that statute to be free from the imposition of any residency restrictions by the Village.

¶ 22    We agree with the position taken by the plaintiffs. It is evident that section 7 of the Labor Relations Act contemplates that there will be "matter[s] with respect to wages, hours and other conditions of employment" that are "specifically provided for in *** other law[s]," and the duty to bargain collectively does not include the obligation to negotiate over such matters. *Id.* Section 10-2.1-6.3(c) specifically provides for the rights of individuals employed in the fire service of a municipality on the matter of whether residency restrictions may be made more restrictive during that individual's period of service or be made a condition of promotion. Thus, section 10-2.1-6.3(c) of the Municipal Code is the kind of law contemplated by section 7 of the Labor Relations Act, and thus the Union's duty to bargain collectively did not include the obligation to bargain over the matter of residency restrictions specifically provided for by the Municipal Code. *City of Markham v. State & Municipal Teamsters, Chauffeurs & Helpers, Local 726*, 299 Ill. App. 3d 615, 618 (1998) (municipality had no duty under section 7 of Labor Relations Act to collectively bargain over matter of police discipline procedure specifically provided for by Municipal Code).

¶ 23    The Village argues on appeal that section 10-2.1-6.3(c) of the Municipal Code should not come into play in this instance because it had no residency requirement "in effect" as required by that statute and because, regardless of the statute, it has the authority as a home rule unit to impose a residency requirement on current employees. We will address the Village's argument concerning its home rule authority first.

¶ 24    Except as limited by the provisions of section 6 of article VII of the Illinois Constitution, home rule units such as the Village "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). Our supreme court has described this provision as giving home rule units "the broadest powers possible." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30. However, with certain exceptions not relevant to this case, "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). If the General Assembly intends to limit or deny the exercise of any power or function by a home rule unit, it must enact a law that specifically states that home rule authority is limited. *Palm*, 2013 IL 110505, ¶¶ 31-32. Absent an express statement in a statute limiting or denying home rule authority, a home rule unit may continue to regulate activities in their communities even if the State has also regulated the same activity. *Id.*; *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287-88 (2001); Ill. Const. 1970, art. VII, § 6(i).

¶ 25    It is undisputed in this case that section 10-2.1-6.3 of the Municipal Code contains an express and specific statement limiting the authority of home rule units, at least to some extent. The parties dispute the extent to which the legislature sought to displace home rule authority

with respect to imposing more restrictive residency requirements on current employees of a municipality's fire service than those in place when the employee was hired. The Village argues that the placement of the home rule restriction in subsection (a) of the statute, as opposed to in subsection (c) or at the end of the statute, indicates a legislative intent to displace home rule authority only with regard to the firefighter hiring process and not with regard to a home rule unit's power to establish the terms and conditions of employment (including residency) for its current employees. The plaintiffs, by contrast, argue that the legislature's use of the phrase "[t]his Section" in the sentence liming home rule, whereas it used the phrase "this subsection (a)" elsewhere in the same subsection, indicates a clear legislative intent that the displacement of home rule authority was not intended to be limited to the powers set forth in subsection (a).

¶ 26    Subsection (a) of section 10-2.1-6.3 of the Municipal Code contains five paragraphs of provisions concerning the applicability of the statute. 65 ILCS 5/10-2.1-6.3(a) (West 2016). Among the provisions that we find most pertinent to our analysis of this issue are the following:

> "Unless a commission elects to follow the provisions of Section 10-2.1-6.4, this Section shall apply to all original appointments to an affected full-time fire department. ***
>
> Notwithstanding any statute, ordinance, rule, or other law to the contrary, all original appointments to an affected department to which this Section applies shall be administered in the manner provided for in this Section. ***
>
> A home rule or non-home rule municipality may not administer its fire department process for original appointments in a manner that is less stringent than this Section. This Section is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of the powers and functions exercised by the State.
> ***
>
> Notwithstanding any other provision of this subsection (a), this Section does not apply to a municipality with more than 1,000,000 inhabitants." *Id.*

Other provisions of subsection (a) beyond those set forth above include provisions addressing how the statute applies in relation to other laws addressing the initial hiring of firefighters, and how it applies to municipalities operating under court orders or consent decrees concerning original appointments to a full-time fire department. *Id.*

¶ 27    Considering the entire statute in context, we conclude that the legislature intended in section 10-2.1-6.3 to deny home rule units the authority to impose residency restrictions on current employees of its fire service that are more restrictive than those in effect at the time the employee began his or her service with the municipality. We disagree with the Village that the legislature's placement of the language limiting home rule in subsection (a) indicates a legislative intent that it not extend to the authority of a home rule unit to impose more restrictive residency restrictions on current employees. Subsection (a) contains numerous provisions addressing the scope and applicability of the statute as a whole, and thus it would seem to be the logical place within the statute at which to include language limiting home rule powers. Significantly, the plain language used by the legislature is that "[t]his Section" is a limitation on the exercise by home rule units of the powers and functions exercised by the

State. This indicates to us that the legislature did not intend to limit its displacement of home rule authority to some parts of the statute but not others. Where the legislature has intended in the Municipal Code to limit the displacement of home rule authority to only part of a statute, it is evident that it knows how to do so. See, *e.g.*, *id.* §§ 11-13-26(b), 11-124-1(d).

¶ 28 We do not discern any legislative intent to displace home rule authority only with regard to the firefighter hiring process, such that it would not extend to the provision at issue. Rather, viewing the statute as a whole and considering all of its provisions in context, we conclude that the legislature intended that the provision at issue, prohibiting the imposition of residency requirements on current employees that are more restrictive than those in effect at the time of that employee's original appointment to the fire service, was to be considered a component of the process by which a municipality administers original appointments to its fire department. Thus, it is within the specific limitation on home rule authority included in the statute.

¶ 29 The Village cites the sentence immediately preceding the one limiting home rule authority to argue that the legislature only intended to preempt a home rule unit from administering its fire department process for original appointments in a manner that is "less stringent" than section 10-2.1-6.3. *Id.* § 10-2.1-6.3(a). It goes on to argue that its "imposing an in-state residency requirement would be administering the fire department process arguably in a manner that is more stringent than what Section 10-2.1-6.3 provides." The Village says nothing further to explain its argument about why imposing residency requirements on current firefighters that are more restrictive than what existed at their time of hire is in fact a "more stringent" method of administering its fire department process than what is required by the statute. We fail to see how the Village's proposal could be considered "more stringent" than what the statute requires, especially when the statute provides that this may not be imposed, and thus we reject the Village's argument on this point.

¶ 30 As stated above, the Village also argues that section 10-2.1-6.3(c) of the Municipal Code should not come into play in this situation because it had never had any residency requirement "in effect." It notes that the statute only prohibits "[r]esidency requirements in effect at the time an individual enters the fire service of a municipality" from being made more restrictive for that individual during his or her time of service for that municipality. *Id.* § 10-2.1-6.3(c). It argues that, for the phrase "in effect" to be given meaning and significance, the statute should not be held to apply where a municipality has no residency requirement at all and subsequently seeks to impose one. It argues that without any residency restriction "in effect" in the Village, the statute does not vest the plaintiffs with the right to be free from one.

¶ 31 Viewing the statute as a whole and construing this phrase in context with the statute's other provisions, we observe that the paragraph preceding the one relied upon by the Village contains a provision that provides context for what is meant by the phrase "[r]esidency requirements in effect at the time an individual enters the fire service of a municipality." That provision in the preceding paragraph states:

> "[A]ll applicants for original appointment to an affected fire department shall be subject to examination and testing which shall be public, competitive, and open to all applicants unless the municipality shall by ordinance limit applicants to residents of the municipality, county or counties in which the municipality is located, State, or nation." *Id.*

It appears to us that this is what the legislature was referring back to when, in the subsequent paragraph, it used the phrase "[r]esidency requirements in effect at the time an individual

enters the fire service of a municipality." In this provision of section 10-2.1-6.3(c) of the Municipal Code, the legislature established a default rule whereby a municipality's examination and testing for original appointment to a fire department would be "open to all applicants" regardless of their residency. It then provided that a municipality could elect not to have this default rule apply, if the municipality enacted an ordinance limiting applicants to those who were residents of a particular geographic area. We conclude that, when the legislature referred to residency requirements "in effect" at the time an individual enters the fire service of a municipality, it was referring to whether the municipality had allowed this default rule to apply or taken action to limit applicants to residents of a particular geographic area. In this case, it does not appear the Village had ever enacted an ordinance limiting applicants for appointment to its fire department to residents of the municipality, county, state, or nation. Absent such ordinance, the default rule of open application without regard to residency was the residency requirement in effect within the Village at the time all its firefighters entered the Village's fire service.

¶ 32 Given our conclusion that section 10-2.1-6.3(c) of the Municipal Code applies and the Union had no duty under section 7 of the Labor Relations Act to collectively bargain over this issue in the first instance, we disagree with the Village's argument that this case is controlled by the provision of section 14(i) of the Labor Relations Act prohibiting an arbitration decision allowing residency outside of Illinois. 5 ILCS 315/14(i) (West 2016). Because this was not an issue over which the parties were required to bargain in the first instance, it was not an issue that should have been considered by the interest arbitrator. 80 Ill. Adm. Code 1230.90(k) (2003). In other words, section 14(i) of the Labor Relations Act cannot control this case because there never should have been an arbitration decision addressing the proposed residency requirements in the first place. As residency requirements were not an issue that should have been included in the decision at all, the decision would not be one "including residency requirements *** [that] allow residency outside of Illinois." 5 ILCS 315/14(i) (West 2016).

¶ 33 The only reason the interest arbitrator was able to address residency requirements was because the general counsel of the Illinois Labor Relations Board issued a declaratory ruling concluding that the Village's proposed residency requirement would not contravene section 10-2.1-6.3(c) of the Municipal Code as the Village had no residency requirement "in effect" at the time any of its firefighters were hired. 80 Ill. Adm. Code 1200.143(b) (2016); 80 Ill. Adm. Code 1230.90(k) (2003). While the general counsel's declaratory ruling is not at issue in this appeal, nevertheless it is obviously inconsistent with our conclusion above. The fact that the interest arbitrator was able to consider the issue based on an interpretation of the Municipal Code that we have found to be incorrect is not a basis for concluding that section 14(i) of the Labor Relations Act therefore controls the outcome of this case.

¶ 34 The Village next argues that the trial court erred in reversing the decision of the interest arbitrator under section 14(k) of the Labor Relations Act. 5 ILCS 315/14(k) (West 2016). That section provides that an arbitrator's order is reviewable by the circuit court but only for reasons that (1) the arbitrator was without or exceeded his or her statutory authority, (2) the order is arbitrary or capricious, or (3) the order was procured by fraud, collusion, or other similar and unlawful means. *Id.*

¶ 35 The Village's arguments on this issue largely mirror what it argued in opposition to the declaratory judgment sought by the plaintiffs. In summary, the Village argues that the

arbitrator acted within his authority in considering this issue under section 14(i) of the Labor Relations Act, based on the general counsel's declaratory ruling. Consistent with its arguments discussed above, the Village argues that the arbitrator's award was proper and appropriate as the issue is controlled by section 14(i) of the Labor Relations Act and section 10-2.1-6.3(c) of the Municipal Code is inapplicable to this case. It similarly argues that the arbitrator's decision was not arbitrary or capricious for the same reasons, as well as because the arbitrator considered appropriate factors in reaching his decision. It argues that the trial court employed an impermissibly broad review of the arbitrator's decision.

¶ 36   In *City of Markham*, 299 Ill. App. 3d at 618-19, this court considered a similar issue and held that an interest arbitrator's award was invalid as a matter of law where the arbitrator adopted a union's proposal to include in the parties' collective bargaining agreement a provision allowing covered police department employees the option to have certain disciplinary matters determined by grievance arbitration, as opposed to going through the disciplinary process provided in the Municipal Code. We agreed with the municipality's position that it did not have a duty in the first instance to collectively bargain over this issue under section 7 of the Labor Relations Act because the discipline of police officers in non-home rule municipalities was a matter "specifically provided for" in the Municipal Code. *Id.* at 617-19 (citing 5 ILCS 315/7 (West 1996)). We held that the interest arbitrator lacked the authority to issue an interest award that ignored the limitations imposed by section 7 of the Labor Relations Act and forced the municipality to violate mandatory provisions of the Municipal Code, and for this reason, we found the interest arbitration award to be invalid as a matter of law. *Id.* at 618.

¶ 37   The same result is warranted in this case. As discussed above, the Union did not have a duty under section 7 of the Labor Relations Act to collectively bargain over the issue of residency requirements for current employees of the Village's fire service because it involved a matter specifically provided for in the Municipal Code. Thus, as in *City of Markham*, we hold that the interest arbitrator lacked the authority to issue an interest award that ignored the limitations imposed by section 7 of the Labor Relations Act and forced a waiver of the plaintiffs' statutory rights to be free from residency restrictions during their period of service with the Village. For this reason we further hold that the provision of the interest arbitration award providing for this is invalid as a matter of law. We find no error in the trial court's ruling reversing the arbitrator's award imposing residency restrictions on current employees.

¶ 38                                    CONCLUSION
¶ 39   In conclusion, we affirm the trial court's granting of summary judgment in favor of the plaintiffs and against the Village and its issuance of the declaratory judgment. We further affirm the trial court's order reversing the arbitrator's award concerning residency.

¶ 40        Affirmed.