NOTICE

Decision filed 12/13/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230264-U

NO. 5-23-0264

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MICHAEL WILLIAMS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 20-L-153 |
| | ) | |
| MACK'S AUTO RECYCLING, INC., | ) | Honorable |
| | ) | Benjamin W. Dyer, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*:     Where there was no genuine issue of material fact, the trial court's order granting summary judgment in favor of Mack's Auto Recycling, Inc. was correct, and we affirm.

¶ 2     Michael Williams slipped and fell on an icy accumulation on property owned and managed by Mack's Auto Recycling, Inc. (Mack's). Williams filed suit against Mack's, and after discovery, Mack's filed its motion for summary judgment. The trial court granted Mack's motion for summary judgment, and the plaintiff timely appealed. We affirm.

1

¶ 3                                     I. Background

¶ 4     On December 11, 2019, Williams drove his pickup truck from Normal, Illinois, to Mack's in Urbana to pick up a transmission that his mother-in-law had purchased.[1] Upon arrival, Williams entered Mack's office to speak with the staff, who advised him to move his truck down to a warehouse bay door so that Mack's workers could load the transmission into the bed of his truck. Security camera footage of the area on this date shows that Williams backed his truck up initially, and then backed it closer to the bay door after the bay door opened. Upon stopping the truck on the concrete apron, Williams did not move the truck again until the transmission was loaded. After Williams parked his truck on the concrete apron, he exited his truck, allegedly stepped on a piece of ice, slipped, and fell.

¶ 5     During Williams's discovery deposition, he testified that on December 11, 2019, as he was driving from Normal to Urbana, he observed snow and ice. Upon arrival at Mack's, he observed snow and ice on the property, including on the pathway leading to Mack's office, and throughout the "junkyard." The concrete apron leading into the bay was on a slight incline. There is no

---

[1]Illinois Supreme Court Rule 341 sets forth the requirements for the appellant's brief. Ill. S. Ct. R. 341 (eff. Oct. 1, 2020). Rule 341(h)(6) mandates that the statement of facts in the appellant's brief contain "appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). In addition, Rule 341(h)(7) mandates that in argument, the appellant must not only make his contentions and include his reasoning but must also include "citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

We are frustrated that the appellant's brief in this case lacks any citation to the record on appeal in his statement of facts, and additionally fails to cite any authority for his arguments on appeal. Although we have the authority to strike the appellant's statement of facts for this blatant failure to follow Illinois Supreme Court Rules (see *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12 (citing *People v. Sprind*, 403 Ill. App. 3d 772, 778-79 (2010))), we instead rely upon the appellee's statement of facts which is in compliance with the rules. Moreover, the appellant's failure to cite any relevant caselaw potentially prevents this court from analyzing any arguments he makes on appeal. While "[t]he appellate court is not a depository into which a party may dump the burden of research" (*People v. O'Malley*, 356 Ill. App. 3d 1038, 1046 (2005)), the appellee's brief succinctly sets forth the applicable law providing us with the ability to review the propriety of the trial court's summary judgment. In response to the appellee's complaints, the appellant added caselaw in his reply brief that we have also reviewed and considered.

evidence as to the degree of the incline, other than from a Mack's employee, Uginor Gutierrez, who characterized the incline as "slight."

¶ 6    A security camera was mounted near Mack's sales office and was pointed in the direction of the loading bay. Williams contends that this camera recorded him opening his truck door, "disappearing" from view, and then standing next to his truck. He contends that this footage captured his slip and fall. Mack's had a second surveillance camera inside the loading bay which recorded aspects of the placement of the transmission into Williams's truck bed. From this same recording, Williams's truck is depicted leaving the loading bay, and there is a slight downward incline visible as he departs. Williams is not seen slipping and falling on this second video.[2]

¶ 7    Although Williams was aware of the snow and ice throughout Mack's parking lot and walkways, he exited his truck after parking it at the bay apparently without looking at the ground. Williams placed his left foot down onto an alleged patch of ice the size of a manhole cover and slipped and fell. Williams testified that the color of the ice was clear and that it did not appear to be aggravated by any "man-made activity." Williams confirmed that the ice he slipped upon was "naturally accumulated." He also confirmed that the ice did not appear to have been caused by any defect or condition of the concrete apron or connected in any way to the incline. Williams testified that he saw nothing on the ground as he was backing up toward the bay. Specifically, he stated that he saw no salt or anything like shovel marks or other "manipulation" of the ice on the concrete apron.

---

[2]From our review of the videos submitted as exhibits in the record on appeal, there is no direct or clear footage showing Williams exiting his vehicle, slipping, and falling. This is not to infer that Williams did not fall, but simply that the footage recovered and submitted into evidence is from obscured angles and at distances that simply do not allow a direct view of Williams exiting his vehicle when parked at Mack's bay on the concrete apron. We further note that Williams's briefs on appeal do not provide references to timestamps on the videos which would assist the court in reviewing this footage. However, deposition transcripts in the record did contain helpful timestamp references.

¶ 8    Mack's manager, Donald Brown, was also deposed and testified that before Williams's fall, Mack's was unaware of the alleged spot of ice. His first indication that ice was present in that area came from Williams himself, who stopped in the office to turn in his paperwork after the transmission was loaded into his truck. Similarly, Mack's two employees who were present at the time of the fall, Robert McCartney and Uginor Gutierrez, both testified that they were both unaware of any ice on the concrete apron prior to Williams's fall.

¶ 9    On October 13, 2020, Williams filed his negligence complaint against Mack's alleging that Mack's "had a duty to maintain their property in a reasonably safe manner and to warn customers of any dangers or risks on their property pursuant to the Illinois Premises Liability Act." He alleged the loading ramp area was inclined and, on the date and time at issue, was covered with ice. He alleged that there were no posted signs or warnings of this dangerous condition, and that Mack's should have known about the dangerous icy condition of the inclined loading area. Specifically, Williams alleged Mack's breached its duty to him in one or more of the following eight ways:

1. Failed to maintain the property in a reasonably safe manner in violation of the Illinois Premises Liability Act (Act);

2. Failed to warn of the slippery and dangerous condition of the premises in violation of the Act;

3. Failed to clean the area where Williams fell despite Mack's knowledge of the dangerous condition in violation of the Act;

4. Negligently failed to maintain its property in a reasonably safe manner;

5. Negligently failed to warn of the slippery and dangerous condition;

4

6.  Negligently created an unsafe and dangerous condition by constructing a loading area on an incline that created an unnatural accumulation of ice in an area where Mack's knew that employees and customers would be loading items;

7.  Negligently requested Williams's assistance in loading the purchased items on this ice-covered incline; and/or

8.  Negligently failed to assist Williams in loading the items.

Williams alleged that because of his slip and fall, he sustained bodily injuries and incurred medical expenses and monetary damages associated with his pain and suffering, disability, and loss of normal life.

¶ 10    Mack's filed its motion for summary judgment on October 7, 2022. Williams filed a responsive pleading, and Mack's filed a reply. On March 24, 2023, the trial court entered its order granting Mack's motion for summary judgment. The court found that no facts cited by Williams met any of the exceptions to the natural-accumulation doctrine, "including his insistence that the man-made incline itself was an unnatural use of the property, or that it was an area to which Williams was directed by employees of Mack's." The court stated that there was absolutely no evidence to establish that the accumulation of ice on the incline was unnatural in nature. Moreover, the court found that Williams cited no persuasive legal authority to establish that a natural accumulation of ice on a man-made ramp or incline created a separate exception under Illinois law. Williams timely appealed from this order.

¶ 11                                II. Analysis

¶ 12    Under section 2-1005(c) of the Code of Civil Procedure, a party is entitled to summary judgment as a matter of law when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." 735 ILCS

5

5/2-1005(c) (West 2018). "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004).

¶ 13    "Summary judgment is a drastic remedy that should be granted only where the movant's right to it is clear and free of doubt." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 357 (2000). In determining whether to grant a request for summary judgment, the trial court strictly construes all evidence in the record against the moving party and liberally in favor of the opponent. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12 (citing *Adams*, 211 Ill. 2d at 42-43); *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986); *Koziol v. Hayden*, 309 Ill. App. 3d 472, 476 (1999). The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29; *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72 (1992). If a reasonable person could draw divergent inferences from the undisputed material facts or if a material fact remains in dispute, then the trial court should deny the motion. *Adams*, 211 Ill. 2d at 43; *Koziol*, 309 Ill. App. 3d at 476. On appeal, courts review summary judgment orders *de novo. Pielet*, 2012 IL 112064, ¶ 29; *Myers*, 225 Ill. App. 3d at 72.

¶ 14    We first examine Illinois tort law on the issue of premises liability. In 1997, portions of the Illinois Premises Liability Act (740 ILCS 130/1 *et seq.* (West 2018)) were declared unconstitutional due to unseverability. *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Subsequent to the supreme court's *Best* opinion, only the following portions of section 2 of the Premises Liability Act remain intact (740 ILCS 130/2 (West 2018)). Section 2 abolished the common law distinction between invitees and licensees with respect to the duty owed by an owner or occupier of land. *Id.* In addition, section 2 outlined the duty owed by the owner or occupant of

6

property to persons entering that property. *Id.* The duty owed is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on the premises. *Id.*

¶ 15    In negligence-based tort claims, the plaintiff must establish the essential elements which include "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury caused by that breach." *Pearson v. Pilot Travel Centers, LLC*, 2020 IL App (5th) 180505, ¶ 28 (citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140, 143 (1990)). "Whether a duty exists is a question of law for the court to decide, which is subject to *de novo* review." *Id.* (citing *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226 (2010)).

¶ 16    We first examine the issue of whether Mack's owed Williams a duty. To make this determination we must first analyze the relationship between the parties "to determine if the 'plaintiff and [the] defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff.' " *Id.* ¶ 31 (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436 (2006)).

¶ 17    Generally, a landowner bears no duty to affirmatively protect an individual from harm while on the landowner's property unless a "special relationship" exists between the parties. Restatement (Second) of Torts § 314A (1965). Illinois courts have recognized the following four special relationships that require the landowner to warn or protect a person from harm: " '(1) carrier-passenger; (2) innkeeper-guest; (3) business inviter and invitee[;] and (4) one who voluntarily takes custody of another in such a manner that it deprives the person of his normal opportunities for protection.' " *Pearson*, 2020 IL App (5th) 180505, ¶ 34 (quoting *Lutz v. Goodlife Entertainment, Inc.*, 208 Ill. App. 3d 565, 569 (1990)); Restatement (Second) of Torts § 314A (1965).

7

¶ 18    In this case, the only possible special relationship between Mack's and Williams is as a business inviter and its invitee. A person is designated as an invitee on the land of another if " '(1) he enters by invitation, express or implied, (2) his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land[,] and (3) there is a mutuality of benefit or a benefit to the owner.' " *Lutz*, 208 Ill. App. 3d at 569 (quoting *Barmore v. Elmore*, 83 Ill. App. 3d 1056, 1058-59 (1980)). Mack's does not dispute that Williams satisfies the requirements for a business invitee.

¶ 19    Although Williams was a business invitee, Illinois cases involving ice, snow, or water on the business owner's property are governed by the natural-accumulation rule, and thus liability for an icy condition is not automatic as liability requires more than the business inviter and invitee relationship. *Kellermann v. Car City Chevrolet-Nissan, Inc.*, 306 Ill. App. 3d 285, 288 (1999). This rule provides that property owners/inviters have no duty to remove natural accumulations of ice, snow, or melted water from their premises. *Riccitelli v. Sternfeld*, 1 Ill. 2d 133, 137 (1953); *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, ¶ 26; *Kellermann*, 306 Ill. App. 3d at 288.

¶ 20    The Illinois Supreme Court adopted the natural-accumulation rule in *Graham v. City of Chicago*, 346 Ill. 638, 643 (1931), holding that it would be "unreasonable to compel a city to expend the money and perform the labor necessary to keep its walks reasonably free from ice and snow during winter months." Initially, the rule applied only to cities and municipalities, but Illinois courts expanded the rule to include landlords, allowing landlords to avoid liability to its tenants, stating that it is " 'unreasonable and somewhat impractical to require a landlord to remove ice and snow from sidewalks used jointly by his tenants where the ice and snow arise from natural

8

causes.' " *Kellermann*, 306 Ill. App. 3d at 289 (quoting *Cronin v. Brownlie*, 348 Ill. App. 448, 456 (1952)).

¶ 21    The natural-accumulation rule extends past the time frame when the precipitation is falling or when the ice, snow, or water has been tracked inside a business owner's premises.

> "[I]f a landowner fails to remove snow or ice that naturally accumulated—either because it made *no* attempt at removal, or because it made *some* attempt but did not remove all the snow or ice—that landowner is not liable for injuries caused by those natural accumulations, no matter how dangerous they may be." (Emphases in original.) *Mickens*, 2019 IL App (1st) 180156, ¶ 28 (citing *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 19).

¶ 22    The natural-accumulation rule has consistently been applied in Illinois to businesses of all types. *Id.* Moreover, the natural-accumulation rule has been applied to all areas on a business owner's property, including sidewalks, parking lots, the interior of the owner's building after being tracked inside, and on the steps of an entrance way. *Id.* Additionally, the rule that a business owner has no duty to remove a natural accumulation of ice, snow, or water is applicable regardless of ongoing precipitation or the length of time that the natural accumulation has been present. *Krywin*, 238 Ill. 2d at 230 (citing *Sheffer v. Springfield Airport Authority*, 261 Ill. App. 3d 151, 154 (1994) (weather was "bright and sunny" when the plaintiff fell on the ice) and *Frederick v. Professional Truck Driver Training School, Inc.*, 328 Ill. App. 3d 472, 478 (2002) (finding that there was no exception to the natural-accumulation rule on the basis of the passage of time)).

¶ 23    In contrast, a business owner may still be held liable for injuries resulting from a slip and fall on accumulated ice, snow, or water on the business owner's property if the ice, snow, or water is construed as "unnatural" or "aggravated." *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill.

9

App. 3d 707, 711 (1999); *Roberson v. J.C. Penney Co.*, 251 Ill. App. 3d 523, 528 (1993); *Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center*, 187 Ill. App. 3d 1040, 1043 (1989). Illinois courts have found liability involving artificial or unnatural accumulations of ice, snow, or water or a natural condition aggravated by the property owner. See *Ziencina v. County of Cook*, 188 Ill. 2d 1, 13 (1999) (mound or pile of snow created by shoveling or plowing to remove the snow is "unnatural"); *Russell v. Village of Lake Villa*, 335 Ill. App. 3d 990, 995 (2002) (mound of plowed snow that melted and refroze into a sheet of ice—the sheet of ice is "unnatural"); *Kittle v. Liss*, 108 Ill. App. 3d 922, 925-26 (1982) (issue of fact remained whether the owner provided adequate lighting in area where business invitee slipped and fell on a natural accumulation); *Roberson*, 251 Ill. App. 3d at 528 (business owner liable if injuries resulted from an artificial or unnatural accumulation or from a natural accumulation that was aggravated in some manner by the owner); *Bloom*, 304 Ill. App. 3d at 711 (business owner liable if the accumulation of ice, snow, or water is unnatural because of the design, construction, or maintenance of the building or premises).

¶ 24    As our review of the trial court's order granting Mack's motion for summary judgment is *de novo*, we turn to the allegations of the complaint filed in this case. Because of the Illinois natural-accumulation rule, most of Williams's allegations are only viable if the incline in Mack's loading bay area resulted in an unnatural accumulation of ice. The other claims raised by Williams involve failure to maintain the area, failure to warn about the ice, and failure to remove the ice—all of which involve the Premises Liability Act and general tort liability. In keeping with the Illinois natural-accumulation rule, Mack's had no duty to "remove, monitor, or exercise reasonable care in making reasonably safe an area which contains naturally accumulated snow and ice." *Kellerman*, 306 Ill. App. 3d at 290.

¶ 25    At issue then is whether the ice just outside of the bay door opening was "unnatural" because of the slight incline. First, we note that based upon the testimony of Mack's employees, no one was aware of the small round patch of ice on the incline. No one had attempted to remove the ice or put salt or other material down. Williams testified that the ice was clear and had not been altered in any way. There was no evidence that Mack's had previously removed ice or snow from that area, and that the ice or snow had melted and refroze. Thus, there was no factual support that the patch of ice was "unnatural." Second, there was no structural or other type of expert evidence supporting the allegation that the slight incline into the loading bay was the cause of the alleged unnatural ice patch. Williams presented no evidence to establish the degree of incline at issue, and presented no evidence that the incline was dangerous. From our review of the security camera footage of the loading bay area, we can confirm that there is a very slight incline from the parking lot up into the bay. However, while there is an incline into the loading bay, the plaintiff was required to establish in some way that this incline is structurally unsound or somehow could have resulted in an unnatural accumulation of ice. Williams failed to do so. Third, Williams cited no legal authority to support his claim that the slight incline resulted in the patch of ice being an unnatural accumulation. From our own research, we find no case authority supporting Williams's claim that this slight incline created an unnatural accumulation of ice. Overall, we conclude that there is no basis in fact or law to find that the patch of ice at issue constituted an unnatural accumulation.

¶ 26    During oral argument on appeal, Williams's attorney admitted that the ice in question was a natural accumulation. However, he disputed Illinois law that business owners had no duty to remove, barricade, or warn against a natural accumulation, arguing that the overall business owner's general duty of due care to its invitees established a genuine issue of material fact barring

11

the trial court's entry of summary judgment in Mack's favor. This argument remains flawed because of the Illinois natural-accumulation law barring liability in certain situations. As the patch of ice at issue was acknowledged to be a natural accumulation by both Williams and his attorney, Mack's has no liability to Williams for this patch of ice.

¶ 27    Also, during oral argument on appeal, Williams's attorney contended that the loading bay was not an "entrance" to Mack's business, and thus caselaw holding that the natural-accumulation law in Illinois extends to areas of ingress to and egress from the business is not applicable in this case. We disagree. Every business is different, and its ingress and egress points will depend upon the type of business involved and may include more than one location. In this case, the defendant was taking delivery of a salvaged transmission. If we were to accept Williams's theory, the only official ingress and egress would be located at Mack's business office. As acceptance of the transmission required the use of a forklift to transfer the item into the bed of the defendant's own pickup truck, the business office at Mack's was not the sole entrance or exit and included the loading bay precisely for completion of purchase transactions such as this one. "When the landowner prescribes a means of ingress and egress, it has a duty to illuminate properly and give adequate warning of *a known, dangerous condition*, or it must repair the condition." (Emphasis added.) *Richter v. Burton Investment Properties, Inc.*, 240 Ill. App. 3d 998, 1002 (1993) (citing *Branson v. R&L Investment, Inc.*, 196 Ill. App. 3d 1088, 1092 (1990)). As previously discussed in this order, there was no evidence that any person affiliated with Mack's was aware of this small patch of ice. Nor was there any evidence that the patch of ice was in any way "unnatural." Williams's argument that the natural accumulation of ice at this loading bay required a separate standard of care is not in keeping with Illinois law.

12

¶ 28     Williams alternatively argues that Mack's should be held liable for this incident because its employees requested his assistance in loading the transmission into his truck bed and/or failed to assist him in loading the transmission. Again, Williams cites no legal authority supporting these allegations. The videos included in the record on appeal do not have sound, and so we are unable to confirm that the employees "asked" for Williams's assistance. From the video, Williams backed his truck toward the loading bay entrance, stopped, and then backed the truck further into the bay. When Williams appears on the video inside the bay, he "assists" by lowering the tailgate of his pickup truck and moving items around in the truck bed to apparently allow for room for the transmission. He also removed a transmission core from the bed of his truck which was eventually placed on Mack's forklift. Mack's employee guided the new transmission into the truck bed—not Williams. After the transmission was in the bed of the pickup truck, Williams merely adjusted its placement, closed the tailgate, and returned to the cab of his truck.

¶ 29     Uginor Gutierrez was Mack's employee who loaded the transmission into Williams's truck bed. During his deposition, Gutierrez testified that he did not see the alleged slip and fall and does not remember any conversations that he may have had with Williams in the loading bay. Portions of the security video were shown to Gutierrez during the deposition. Based upon the security footage, Gutierrez explained that he used the forklift to place the transmission into the bed of Williams's truck. Additionally, Williams removed an old transmission core from his truck bed and assisted Gutierrez in loading that core onto Mack's forklift. Then, Williams entered Mack's sales office where he picked up the receipt for the transaction. Gutierrez was present in the office when Williams entered the office to pick up the paperwork and testified that Williams informed those in Mack's office that he had fallen on ice outside of the bay.

13

¶ 30     Although Williams testified that a Mack's employee directed him to assist in the loading of the new transmission into his truck bed, from our review of the security video, coupled with the testimony of Gutierrez, Williams did not load the transmission or assist Gutierrez in loading the transmission. Instead, Mack's employee loaded the transmission into Williams's truck bed. While we confirm that Williams lowered the tailgate of his pickup truck, and after the transmission was loaded into the bed of his truck, Williams adjusted the placement of the transmission in the bed and then closed his truck bed, these actions do not necessarily align with the allegations in his complaint that he "assisted" with loading the transmission.[3] At most, Williams's assistance was in opening, and then closing, the tailgate of his pickup truck. In that limited way, he may have assisted Mack's staff. However, simply assisting in this manner, without citing legal authority establishing that a business owner has liability in this situation, is insufficient to raise a genuine issue of material fact. Thus, exiting his truck to lower and then raise the tailgate of his truck at Mack's loading bay is no different than exiting his truck on Mack's property to enter the sales office. Both scenarios fall into the same category of icy falls on a business owner's property given the natural-accumulation rule in Illinois: "[the] landowner is not liable for injuries caused by those natural accumulations, no matter how dangerous they may be." *Mickens*, 2019 IL App (1st) 180156, ¶ 28 (citing *Murphy-Hylton*, 2016 IL 120394, ¶ 19).

¶ 31                                        III. Conclusion

¶ 32     For the foregoing reasons, we affirm the Champaign County circuit court's order granting summary judgment in favor of Mack's Auto Recycling, Inc.

¶ 33     Affirmed.

---

[3]The allegations of Williams's complaint only reference the loading of the transmission purchased from Mack's, and do not mention the transmission core that was apparently from the transmission being replaced Williams left with Mack's.